**BLUE MOUNTAIN PRESERVATION ASSOCIATION and the Appalachian Trail Conference, Appellants**

v.

**The TOWNSHIP OF ELDRED, Board of Supervisors of Eldred Township and Alpine Rose Resorts, Inc.**

Commonwealth Court of Pennsylvania.

Argued Nov. 2, 2004.

Decided Feb. 1, 2005.

Charles W. Elliott, Easton, for appellants.

Wieslaw T. Niemoczynski, Stroudsburg, for appellee, Twp. of Eldred, Bd. of Supervisors of Eldred Twp.

Emil W. Kantra, II, Center Valley, for intervenor, Alpine Rose Resorts, Inc.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.

This matter arises as a result of plans by Alpine Rose Resorts, Inc. (Alpine) to develop a road course for high performance cars along with accessory structures, such as a country club, garages, fueling stations, and vehicle parts and service stations, on a 350–acre tract of land that is adjacent to the Appalachian Trail (Trail). Blue Mountain Preservation Association and The Appalachian Trail Conference (collectively, Appellants [1]) appeal from the order of the Court of Common Pleas of Monroe County (common pleas), affirming the Eldred Township Board of Supervisors' (Board) approval of the preliminary land development plan submitted by Alpine. Although Appellants raise various procedural and substantive challenges to the propriety of the approval of the development plan, the crux of the appeal is that the noise generated by cars on the track will impair the esthetic values of the Trail in violation of the Pennsylvania Appalachian Trail Act (Trail Act) [2] and Article I, Section 27 of the Pennsylvania Constitu-

1. According to Appellants' brief, Blue Mountain is a Pennsylvania non-profit corporation organized to preserve and protect the natural resources and environment of the Blue Mountain in Monroe County. The Appalachian Trail Conference is a non-profit organization dedicated to protecting, promoting, managing and providing stewardship for the Trail.

2. Act of April 28, 1978, P.L. 87, *as amended*, 64 P.S. §§ 801–805.

tion. We affirm in part, and reverse and remand for additional consideration.

In March 2002, Alpine submitted a Project Information and Narrative, detailing its preliminary land development plan for developing a road course for high performance sports cars along with related facilities on its 350–acre tract of land in Eldred Township (Township). The site for the proposed development is located on land adjacent to the Trail. The area is rural and Eldred Township has not enacted a zoning ordinance; therefore, the specific use is not expressly prohibited. Although the neighboring area is largely residential, there are also commercial properties in the vicinity. The Township's Planning Commission (Commission) held monthly meetings on the plan from March to October. Appellants and nearby landowners had an opportunity to present their opinions and concerns regarding the proposed development. Some of the areas of concern addressed at these meetings were storm water management, the sewage system, and the increase in noise and pollution that would result. Apparently, in September 2002, the Commission initially recommended that the Board deny the plan because it did not comply with the Township's Subdivision and Land Development Ordinance's (SALDO) storm water requirements. The Board subsequently approved the plan, however, after the Township engineer opined that the storm water issue could be resolved. In approving the plan, the Board imposed various conditions, including that "[t]he applicant agrees to be bound by the levels found in the TPD study, with no increase of more than 5 DBA."[3] Appellants appealed.

In October of 2002, Appellants also filed a substantive challenge to the Township's SALDO, contending that it was contrary to the Trail Act and Article I, Section 27 of our Constitution. Appellants also requested that the Board appoint a zoning hearing board to hear its challenge. The Board denied the challenge on the basis that it was premature and the Board lacked jurisdiction. Appellants appealed and the appeal was consolidated before common pleas with Appellants' appeal from the subsequent approval of Alpine's preliminary plan. Apparently, after the matter was appealed to common pleas Alpine conceded that its original sound studies, which were presented during the approval process, were flawed, so they conducted new studies and submitted the studies along with the deposition of their expert, Greg Richardson of Traffic Planning and Design (TPD), to common pleas. In response, Appellants submitted the deposition of an expert, Christopher Menge, who testified regarding perceived flaws in Richardson's study.

After a review of the record before the Board as well as the new depositions submitted on appeal, common pleas concluded, *inter alia,* that: (1) he had the authority to adjudicate the substantive challenge to the Township's SALDO in the absence of a zoning hearing board; (2) the Board's approval of Alpine's preliminary plan did not violate the Trail Act or Article I, Section 27; (3) the impact the proposed development will have on area traffic and the existing road system was not sufficiently addressed by the Board as required by the SALDO; (4) the effects of noise and air

---

**3.** DBA is the abbreviation for "decibel." The "TPD study," referred to is the noise study and analysis performed by Alpine's expert, Greg Richardson, of Traffic Planning and Design (TPD). The study set forth, *inter alia,* existing ambient sound levels measured at various points around the Alpine tract, including two locations along the Trail, as well as projected sound levels for the road course once it was developed and noise mitigation devices employed.

pollution created by the increase in traffic on neighboring properties and the Trail was not sufficiently addressed by the Board; (5) the impact the proposed development will have on public resources such as utilities, police and fire was not sufficiently addressed by the Board as required by the SALDO; and (6) the proposed development did not constitute a nuisance *per se*. Accordingly, common pleas reversed the Board's approval and remanded for further consideration of the subjects identified.[4]

The Board held further hearings on remand and then again approved the preliminary land development plan. A second appeal to common pleas followed. Common pleas affirmed. In doing so, common pleas concluded that the Board adequately evaluated the impact of increased traffic resulting from the proposed development on the existing roadways, neighboring residences and Trail as well as the impact the proposed development would have on public resources. This appeal followed.

Appellants first contend that common pleas erred in failing to make specific findings of fact and conclusions of law as required by Section 1005-A of the Municipalities Planning Code (MPC),[5] 53 P.S. § 11005-A. According to Appellants, specific fact-finding is crucial because common pleas received substantial additional evidence, including the transcripts of eight depositions of five witnesses and numerous exhibits. Appellants contend that common pleas' opinion is deficient because he, *inter alia*, failed to make any credibility findings, to resolve any conflicts in evidence regarding the noise generated by the proposed development and its impact on the surroundings, or to determine the validity of Alpine's noise studies.[6]

■ Appellant is correct that where common pleas takes additional evidence, it must decide the case *de novo* and set forth sufficient factual findings to enable appellate review. *See* Section 1005-A of the MPC; *De Cray v. Zoning Hearing Bd.*, 143 Pa.Cmwlth. 469, 599 A.2d 286 (1991). Here, while common pleas did not make specific numbered factual findings regarding the credibility of the expert witnesses or their noise studies, his opinion reviews Alpine's assertions regarding the validity of their noise studies, notes that Alpine's expert made modifications to the computer program used to perform the studies in order to make it more accurate in predicting noise levels of high performance sports cars,[7] and notes that Richardson, Alpine's

---

4. Appellants appealed to this court and we quashed the appeal because it was an interlocutory appeal not appealable as of right. *See Blue Mountain Preservation Assoc. v. Township of Eldred*, No. 1887 C.D. 2003 (Pa. Cmwlth. filed January 9, 2004).

5. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101—11202.

6. Appellants emphasize that such findings are critical because it is undisputed that the noise studies underlying the Board's first conditional approval were flawed, there is a conflict regarding whether the revised studies presented to common pleas are valid, and the parties' noise measurements greatly differ.

7. Appellants contended at oral argument before this court that common pleas' finding that Alpine's expert modified the computer program to enable it to more accurately predict the noise levels generated by the cars on the road course is not supported by the record. We believe Appellants are misinterpreting common pleas' comment. A review of Richardson's testimony indicates that he included various factors in the computer program, such as road surface, speed of vehicles, tree zones, mitigation measures, etc., to make the noise predictions as accurate as possible. He also ran the program using data for medium-sized trucks, a louder vehicle, to predict a worst-case scenario regarding the road course's possible noise impact. Further, Richardson testified that he took some read-

expert, opined that Alpine could honor the 5 decibel sound limit on off-site sound locations. We know of no authority mandating that common pleas make specific findings regarding the credibility of every witness, especially where the opinion reflects which witnesses were credited. Here, as common pleas only discussed Alpine's expert testimony and studies and concluded that Alpine is bound by the condition of approval, common pleas implicitly found Alpine's expert's opinion and testing credible. Thus, common pleas' opinion satisfies Section 1005–A of the MPC and is sufficient to enable appellate review.

Appellants next argue that common pleas erred in allowing Alpine to modify its preliminary plan on appeal and then affirming the approval based upon modifications never reviewed by the Board. Appellants specifically object to Alpine's second noise study because it included the following modifications which were not a part of the original plan submitted to the Board: (1) the height of a noise berm increased; (2) a new sound mitigation wall was added; (3) the number of cars allowed on the track at one time was reduced; and (4) the estimated speed that cars will be driven on the track was lowered.

Appellants rely on *Lafayette College v. Zoning Hearing Board,* 138 Pa.Cmwlth. 579, 588 A.2d 1323 (1991), in support of their assertion that the plans were improperly modified on appeal. There, Lafayette College sought a special exception to use a single family residence to house 13 students. Importantly, Lafayette's application demonstrated that it did not comply with the municipality's zoning ordinance with respect to parking. In reversing the

Zoning Hearing Board's denial and granting the special exception, common pleas imposed conditions to rectify the violations of the ordinance and ordered Lafayette to reposition its off-site parking spaces. On appeal, this court noted that an applicant for a special exception has the burden of proving that the request complies with the objective requirements of the zoning ordinance and that failure to provide the parking required under the ordinance is a proper basis for denying a request for a special exception. *Id.* at 1326–27. Finally, we observed that a condition is imposed to reduce any adverse impacts a use allowed under an ordinance may have, not to enable the applicant to meet his burden of demonstrating that the use is allowed. *Id.* at 1326.

■ We agree with Alpine that *Lafayette* is not controlling. The nature of the proceedings vastly differ when seeking land development approval as opposed to a special exception. The land development process is a give and take process allowing the modification and change of plans as they are reviewed by the Commission and Board. Moreover, the Board has the authority to grant waivers from its SALDO requirements. However, an applicant seeking a special exception must demonstrate compliance with the zoning requirements and waivers may not be granted to bring a deficient plan into compliance. *See Lafayette.* We are not aware of any authority to support Appellant's position that modifications to the plan cannot occur after the Board has reviewed the matter, especially when common pleas has accepted additional evidence from both parties and is reviewing the plan *de novo.*[8]

---

ings at a race track in the area and of a high performance car and took that information into account when he ran the computer model used for predicting noise.

8. We also note that the record contains a letter from the Township's engineer to the Board, noting that he received information from Alpine which pertained to additional sound mitigation measures in the nature of

■ Next, Appellants contend that common pleas erred in affirming the approval of the preliminary plans because Alpine's own noise studies demonstrate that it cannot meet the 5 decibel condition of approval. According to Appellants, Alpine's second sound study, submitted to common pleas, demonstrates that they will exceed the 5 decibel limit at four off-site locations tested. Appellants further argue that Alpine's expert's opinion that the 5 decibel limit is obtainable in light of its own studies demonstrating otherwise is legally insufficient to demonstrate compliance with the condition. To support this argument, Appellants rely on *Appeal of Baird,* 113 Pa.Cmwlth. 637, 537 A.2d 976 (1988) and *Edgmont Township v. Springton Lake Montessori School, Inc.,* 154 Pa.Cmwlth. 76, 622 A.2d 418 (1993) for the proposition that a promise to comply is insufficient; rather, plans demonstrating actual compliance are required. Both *Edgmont* and *Baird* involve applications for special exceptions that failed to demonstrate compliance with applicable provisions of the zoning ordinance. In *Edgmont,* the court opined:

> To be entitled to receive a *special exception* it was incumbent on the [applicant] to come forward with evidence detailing how it was going to be in compliance with the requirements necessary to obtain a special exception to operate . . . in [the] zoning district. Evidence is not a "promise" that the applicant will comply because that is a legal conclusion the Board makes once it hears what the applicant intends to do and then deter-

mines whether it matches the requirements set forth in the ordinance.

622 A.2d at 419 (citations omitted, emphasis added).

Again, we conclude that both *Baird* and *Edgmont* are distinguishable because they both involved applications for special exceptions, which, as noted, requires the applicant to demonstrate that his proposed use meets the applicable requirements of the zoning ordinance, such as setback, lot size, parking, etc. As a result, a mere promise to comply will not rehabilitate an application that reveals a failure or inability to adhere to the ordinance requirements. Here, common pleas and the Board were required to determine whether the evidence submitted was sufficient to demonstrate compliance with the SALDO, which does not contain any noise restrictions. Moreover, while imposition of a condition to bring a non-conforming special exception application into compliance with the zoning ordinance is improper, *see Lafayette College,* the MPC authorizes the imposition of conditions upon a land development plan. *See generally Doylestown Township v. Teeling,* 160 Pa.Cmwlth. 397, 635 A.2d 657 (1993). Finally, Baird and Edgmont are cases in which conformity with ordinance standards was readily ascertainable, but the plans were either too vague for compliance to be determined or clearly showed non-compliance. Thus, granting a special exception based on a promise to do better than the plan was unacceptable. Here, however, whether Alpine's plan would meet the Board's noise level condition was a question of fact which could only be resolved by projections of

two fences that were not in the initial approved preliminary plans. The Township engineer notes that he did not consider these additions to constitute a substantial or material change to the plans. While it is unclear that the engineer is referring to the same two additions, i.e., increasing the height of an

existing berm and adding another sound barrier, it is probably reasonable to assume that they are the same. And, the Board again approved the plans following remand. At that point, the Board would have been aware of any changes in the preliminary plans.

experts. No absolute certainty on the matter can be had until the facility is in operation. Both common pleas and the Board accepted the expert testimony that Alpine could operate in compliance with the requirement. Alpine's noise studies which indicate that the noise level may exceed the condition under certain circumstances merely goes to the weight and credibility of the expert's opinion. The noise restriction was accepted by Alpine as a condition of operation and can be enforced if final approval is granted and the facility operated in excess of the noise levels imposed. Thus, we discern no error in common pleas' acceptance of Alpine's evidence that it could operate within the restrictions imposed.

■ Appellants' fourth argument is that common pleas erred in approving the noise condition because it is vague, ambiguous, lacks scientific support, based upon an invalid noise study, fails to protect the Trail's acoustic environment, and cannot be applied by an acoustician. In support of these assertions, Appellants point to the testimony of their own expert, Christopher Menge, who opined that the 5 decibel condition of approval is not adequate, is vague and ambiguous because it fails to dictate the methods and test locations for determining compliance and fails to specify the base levels in the TPD report to be used. Accordingly, Appellants contend that the condition lacks criteria necessary for enforcement.

Alpine responds that the Board's condition refers to the TPD study, and the locations for testing are clearly set forth in the report submitted to the Board. Moreover, Alpine contends that equipment exists to take sound measurements and that compliance can simply be determined by taking sound measurements before the project is built and then after the project is completed. Thus, Alpine contends that the condition is sufficiently specific for enforcement purposes.

After a review of the record, we conclude that there is some merit to Appellants' contention. We agree that there is no ambiguity to what levels should be focused on. Enforcement of the condition requires a determination of the sound levels prior to construction and operation of the development and a subsequent determination once the development is built and in operation. Alpine has agreed to limit the noise impact to 5 decibels over existing noise levels. Each table in Alpine's noise study sets forth the same existing sound levels pre-development and Richardson testified to the time of day, day of the week and time of year when such levels were measured.[9] What is not apparent from the record, however, is the specific location where such measurements were taken. The maps in the record that mark the locations of the various noise measurements appear to lack any metes and bounds and do not appear to be drawn to scale. Richardson testified he used a site plan, as well as scales to properly measure the distance from landmarks and a measuring wheel to locate each site once chosen. We cannot discern such information in the record, and Alpine has not pointed us to any. Accordingly, we think it is necessary for this matter to be remanded so that the condition can be modified to identify the exact location where noise measurements shall be taken for enforcement purposes.

■ The fifth argument raised on appeal is that Alpine's preliminary land de-

9. Specifically, Richardson testified that the sound levels were measured on Saturday, April 12, 2003, between 11:00 a.m. and 3:30 p.m. Some of the measurements were modeled instead of actual readings because Richardson did not have access to the property.

velopment plan failed to comply with the Township's SALDO requirement. Specifically, Appellants assert that Section 4.3(d)(9)(b) of the SALDO requires a Community Impact Analysis that addresses, *inter alia*, "[d]isturbance to the natural ecology such as alluvial soil areas, loss of tree cover and land erosion," as well as "[h]armony with the character of the surrounding environment." [10] According to Appellants, Alpine's Impact Statement fails to contain a meaningful analysis of the project's impact on the natural ecology [11] or a meaningful analysis of the project's harmony with the surrounding environment. [12] While Appellants note that Alpine submitted "some" information in other documents, and "it may have been permissible to use data generated for such other documents in order to conduct the required ... Impact Analysis," "[Alpine] was not free to address the requirements in such a superficial and meaningless manner, leaving it up to others to attempt to locate and pull together possibly relevant information from disparate and unnamed sources, analyze it, and ... conduct the impact analysis which the SALDO required the *developer* to conduct." Appellants' brief at 35 (emphasis in original).

Appellants also contend that common pleas erred in relying on *Goodman v. Board of Commissioners*, 49 Pa.Cmwlth. 35, 411 A.2d 838 (1980), to conclude that the Section 4.3 requirement of harmonious development [13] was unenforceable.

In addition to concluding that the "harmonious development" requirement of the impact analysis was unenforceable, common pleas concluded that Alpine had submitted sufficient information addressing the impact of the project on the natural ecology. Specifically, common pleas noted that Alpine submitted a Preliminary Erosion & Sedimentary Report, which common pleas concluded appropriately addressed the project's impact on the soils and the steps to be taken to prevent erosion. Common pleas also noted that Alpine responded to Blue Mountain's questionnaire regarding loss of native plants and animals by detailing the amount of acreage that would become impervious cover, deforested and reforested.

First, we note that we agree with common pleas that our appellate caselaw dictates that subdivision and land development criteria requiring harmonious de-

10. This provision is taken from common pleas' opinion because neither the certified record nor the reproduced record contains the Township's SALDO, in contravention to this court's direction in *Shelbourne Square Associates, L.P. v. Board of Supervisors*, 794 A.2d 946 (Pa.Cmwlth.2002), *alloc. denied*, 572 Pa. 727, 814 A.2d 679 (2002). Moreover, at oral argument, the court requested counsel to provide the court with a copy of the ordinance. To date, more than two months after argument, no such copy has been provided. We assume counsel's lapse in this regard is not indicative of the importance Appellants place on this issue.

11. Appellants note that with respect to disturbance of the natural ecology, Alpine merely stated "See page 4: 'Site Development Plan–Area Measurements' dated March 1, 2002."

*See* Impact Analysis contained in Project Information & Narrative. Page 4 of the Site Development Plan, Appellants contend, contains merely a terse recital of various area measurements relating to forest size, impervious cover, etc., and is devoid of any analysis or evaluation regarding the project's disturbance of the natural ecology.

12. Regarding the project's harmony with surrounding developments, Alpine stated, "The Alpine Rose Resorts facility will be constructed to minimize the impact on surrounding development by buffering created by maintaining existing tree cover and, where necessary, creating buffer areas around the perimeter of the Development." *Id.*

13. Again, we lack a copy of the relevant provision.

velopment are unenforceable. *See Anderson v. Board of Supervisors,* 63 Pa.Cmwlth. 335, 437 A.2d 1308 (1981); *Goodman.* Thus, as such criteria are unenforceable, Alpine's failure to give a more detailed analysis of the proposed development's "harmony" with the surrounding neighborhood in its impact statement is harmless at most.

Second, we are not aware of any authority and, Appellants have not cited us to any, that supports the proposition that common pleas and the Board cannot look beyond the Impact Analysis to determine whether sufficient information has been submitted to determine whether the plan complies with the SALDO. Therefore, we conclude that common pleas and the Board were free to look at the record as a whole to determine whether Alpine had substantively provided the information necessary to determine whether its plan complied with the SALDO. In this regard, we decline to micromanage the Board's process for reviewing and approving development plans.

■ The sixth argument raised on appeal is really a challenge to the credibility of Alpine's evidence regarding the impact the project will have on the esthetic values of the Trail, particularly from a sound standpoint. Appellants devote a large portion of their brief to pointing out various perceived flaws in Alpine's noise studies and reviewing and touting the validity and superiority of their own noise impact evidence. We find no merit to these contentions. Common pleas was faced with two competing experts with different opinions regarding the best manner to evaluate the ambient sound levels of the immediate area and Trail prior to the development and how to best predict the sound that will emanate from operation of the road course once developed. We have reviewed Richardson's testimony and find that he was properly qualified as an expert and that his testimony was unequivocal. The alleged flaws in his opinion are matters that go to the weight of his testimony and cannot be reviewed by this court. Moreover, we note that there can be no certainty in the noise predictions because they are simply that, predictions that are based on computer models and programs. Regardless of the levels that Richardson predicted would result from operation of the road course, Alpine remains subject to the enforceable 5 decibel limitation imposed by the Board and affirmed by common pleas. Therefore, if the actual sound levels from operation exceed the condition imposed, Alpine will be in violation of the conditions of approval and most likely face various enforcement actions if it fails to live up to its promise to take measures necessary to bring its operation into compliance.

Appellants next assert that the Board and common pleas failed to carry out their responsibilities under the Trail Act and Article I, Section 27. According to Appellants, the Township failed to protect the Trail through its powers of land use regulation. Appellants contend that the Township was required by Article I, Section 27 and the Trail Act to take affirmative action to protect the Trail and its "soundscape" either through zoning or including specific provisions for that purpose in its SALDO. Appellants also contend that common pleas failed to review the Board's action under the criteria articulated by this court in *Payne v. Kassab,* 11 Pa.Cmwlth. 14, 312 A.2d 86 (1973), *aff'd,* 468 Pa. 226, 361 A.2d 263 (1976). According to Appellants, when the *Payne* analysis is employed, Alpine's plan does not pass constitutional muster.

Article I, Section 27 of our Constitution provides as follows:

The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic

values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

The Trail Act, which was enacted 6 years after Article I, Section 27, provides, in pertinent part, as follows:

In order to implement Article I, Section 27 ... with respect to the [Trail] in Pennsylvania as a source of natural, scenic, historic and esthetic values to be preserved and as a public natural resource to be conserved and maintained for the benefit of all the people, the General Assembly finds as a matter of legislative policy that planning and zoning by a municipality [as defined in the Municipalities Planning Code] to implement Article I, Section 27 is a valid exercise of the police power under that code.

Section 2, 64 P.S. § 802. Section 3(b) of the Trail Act provides in part that the Trail "shall be held, developed and administered primarily as a footpath, consonant with the provisions of the National Trail Systems Act applicable to the [Trail] as part of the National Scenic Trail System, and the natural scenic beauty thereof shall be preserved insofar as is practicable." 64 P.S. § 803(b).

Finally, Section 4 provides:

Political subdivisions, including municipalities .... through which the [Trail] passes shall have the power and their duty shall be to take such action *consistent with applicable law*, as at least an interim measure, to preserve the natural, scenic, historic and esthetic values of the trail and to conserve and maintain it as a public natural resource. Such municipalities may act hereunder in that section of the municipality through which the [Trail] passes without zoning the entire municipality as required under Section 605 of the Pennsylvania Municipalities Planning Code.

64 P.S. § 804 (emphasis added).[14]

■ In determining whether the Board had an affirmative duty to legislatively protect the Trail, we begin with the basic principle that the MPC does not mandate that municipalities enact zoning ordinances. *See* Section 601, 53 P.S. § 10601 ("The governing body of each municipality ... *may* enact, amend and repeal zoning ordinances ....") (emphasis added). After a review of various appellate cases discussing Article I, Section 27, we also conclude that that provision does not create an affirmative duty to enact legislation specifically preserving and protecting environmental treasures. Recognizing that "it is difficult to conceive of any human activity that does not in some degree impair the natural, scenic and esthetic values of the environment," [15] this court in *Payne v. Kassab*, stated as follows:

14. Interestingly, the legislature also empowered the Commonwealth to take affirmative action to preserve the Trail. Section 3 of the Trail Act provides:

(a) The Commonwealth ... through the Department of Environmental Resources ... is authorized independent of any action by a municipality under Section 4 to enter into written cooperative agreements with political subdivisions, landowners, private organizations and individuals and to acquire by agreement, gift, eminent domain

or purchase, land, rights-of-way and easements for the purpose of establishing, protecting and maintaining a walking trail right-of-way across this Commonwealth, now generally known as the. Appalachian Tail ...

64 P.S. § 803(a). Evidently, the Commonwealth has not taken any specific action relevant to protecting the Trail in Eldred Township.

15. *Payne v. Kassab*, 11 Pa.Cmwlth. 14, 312 A.2d 86, 94 (1973), *aff'd*, 468 Pa. 226, 361

We hold that Section 27 was intended to allow the normal development of property in the Commonwealth, while at the same time constitutionally affixing a public trust concept to the management of public natural resources of Pennsylvania. The result of our holding is a controlled development of resources rather than no development. We must recognize, as a corollary of such conclusion, that decision makers will be faced with the constant and difficult task of weighing conflicting environmental and social concerns in arriving at a course of action that will be expedient as well as reflective of the high priority which constitutionally has been placed on the conservation of our natural, scenic, esthetic and historical resources.

The court's role must be to test the decision under review by a threefold standard: (1) Was there compliance with *all applicable statutes and regulations relevant to the protection of the Commonwealth's public natural resources?* (2) Does the record demonstrate a reasonable effort to reduce the environmental incursion to a minimum? (3) Does the environmental harm which will result from the challenged decision or action so clearly outweigh the benefits to be derived therefrom that to proceed further would be an abuse of discretion?

11 Pa.Cmwlth. 14, 312 A.2d 86, 94 (1973), *aff'd,* 468 Pa. 226, 361 A.2d 263 (1976) (emphasis added).[16] Thus, under the analysis enunciated in *Payne* and as subsequently applied, we have interpreted Section 27 only to require consideration of the statutes applicable to the development at issue, *see, e.g., Morris v. South Coventry Township Board of Supervisors,* 836 A.2d 1015 (Pa.Cmwlth.2003), *appeal denied,* — Pa. ——, 860 A.2d 126 (2004); *Community College of Delaware County v. Fox,* 20 Pa.Cmwlth. 335, 342 A.2d 468 (1975); we have not interpreted Section 27 to require a municipality to take specific legislative action with respect to the protection of its public natural resources.[17] Indeed, in *Snelling v. Department of Transportation,* 27 Pa.Cmwlth. 276, 366 A.2d 1298, 1305 (1976), this court held that "Article I, Section 27 does not require consideration of factors beyond those which, by statute, must be considered in evaluating projects which are potentially harmful to the environment." Applying that conclusion here, the only relevant provisions are the Trail Act and the Township's SALDO, and neither imposes an affirmative duty to zone, nor provides for noise regulation on or near the Trail.

■ Although this appears to be an issue of first impression, we do not construe the Trail Act to mandate, in the absence of a zoning ordinance, the enactment of zoning legislation to protect the esthetic values of the Trail. The express language of the Act requires municipalities only to take such action "consistent with applicable law." Thus, contrary to Appellants' asser-

---

A.2d 263 (1976) [quoting *Commonwealth v. National Gettysburg Battlefield Tower, Inc.,* 8 Pa.Cmwlth. 231, 302 A.2d 886, 895, *aff'd,* 454 Pa. 193, 311 A.2d 588 (1973)].

**16.** In *Payne,* citizens brought an equity action against various City of Wilkes–Barre officials and the Department of Transportation to enjoin the Department from widening the street, which would necessitate encroaching on one-half acre of public park land with historic significance.

**17.** While Section 604 of the MPC provides that zoning ordinances shall be designed to, *inter alia,* promote, protect and facilitate the "preservation of the natural, scenic and historic values in the environment and preservation of forests, wetlands, aquifers and floodplains," that provision is not applicable because Eldred Township has not enacted a zoning ordinance.

tion, we conclude that neither the constitution nor the Trail Act imposed an affirmative duty on the Board to enact legislation providing for noise regulation in or near the Trail.

Moreover, while common pleas did not specifically articulate a *Payne* analysis in reviewing the development plan and the Board's decision, we are satisfied that the record demonstrates that the considerations required by *Payne* were undertaken and satisfied. Other than the Trail Act, neither party has pointed to any specific statute or regulation that is applicable to protect the Trail. In addition to the 5 decibel condition, the Board placed other noise minimizing restrictions, such as no public announcement system, and limiting communications to message board, radio and phones and similar devices, and Alpine agreed to place various sound barriers throughout its property and to conduct its operations in a manner to comply with the noise restriction. Further, Alpine presented evidence that the project would not negatively impact the quality of the air or violate existing storm water requirements. Clearly, the record demonstrates a reasonable effort to reduce the environmental impact to a minimum, and the environmental harm cannot be said to "so clearly outweigh the benefits to be derived therefrom that to proceed further would be an abuse of discretion." Accordingly, we conclude that Alpine's preliminary development plan passes constitutional muster.

▮　Appellants next contend that the Board and common pleas erred in approving the preliminary plan because the proposed development constitutes a nuisance *per se*. In support, Appellants cite various cases that conclude that locating a commercial business, such as a gas and service station, Pizza Hut and public garage, in a purely residential neighborhood consti-

tutes a nuisance per se. We find no merit to this contention for several reasons.

In *Groff v. Borough of Sellersville*, 12 Pa.Cmwlth. 315, 314 A.2d 328 (1974), this court defined a nuisance as follows:

> "In legal phraseology, the term 'nuisance' is applied to that class of wrongs that arise from the unreasonable, unwarrantable, or unlawful use by a person of his own property, real or personal, ... working on obstruction or injury to a right of another, or of the public, and producing such *material* annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage...." "A public nuisance is an inconvenience or troublesome offense that annoys the whole community in general, and not merely some particular person, and produces no greater injury to one person than to another—acts that are against the well-being of the particular community—and is not dependent upon covenants. The difference between a public and a private nuisance does not depend upon the nature of the thing done but upon the question whether it affects the general public or merely some private individual or individuals...."

*Id.* at 330 (citations omitted, emphasis added). Moreover, in light of Appellants' contention that any commercial use in a residential area is automatically deemed a nuisance *per se*, we note that our Supreme Court has opined as follows:

> When owners of real estate in a residential area desire to preserve their neighborhood in an unchanged condition, they must secure appropriate zoning ordinances or be protected by building restrictions. In the absence of zoning ordinances or restrictions any citizen may purchase real estate in the area and use it for *any lawful purpose*. This is his constitutional right. However, in so us-

ing the premises he must not create a *nuisance*, which affects health, safety or morals. In judicially determining whether a nuisance exists, many uses, by their very natures, incontrovertibly constitute nuisances in a residential district which will be so decreed as [a] *matter of law*. The existence of other nuisances must be established by testimony as in other cases.... 'Because certain types of business, by the necessary incidents of their normal operation, deleteriously affect the health and comfort of the community, their establishment in residential districts has been held to constitute a nuisance as a matter of law.'

*Menger v. Pass*, 367 Pa. 432, 434–35, 80 A.2d 702, 703 (1951) (citations omitted, emphasis in original).

Initially, we note that we disagree with Appellants' characterization of the area at issue as exclusively "residential or conservation/recreation" because the properties immediately adjacent to the Alpine tract are residences, a rod and gun club and the Trail. Unlike the case relied on, which primarily deals with completely developed residential neighborhoods, the area at issue is rural, with large undeveloped areas, such as the 350 acre tract presently under consideration, bordered by some residences. Moreover, a rod and gun club, which is not a quiet establishment, is in the very neighborhood. In addition, Appellants acknowledge in their brief that four properties with nonresidential uses are within a mile, if not closer, to the Alpine tract; specifically: "(1) a 'race car set up and service garage', immediately across the road from the Alpine Rose facility, which appears to have sprung up in anticipation of the facility ...; (2) a rod and gun club ...; (3) a dog kennel ...; (4) a sand operation, shown in a rural wooded area and whose property extends in a long finger shape which takes it near the proposed

Alpine Rose site." Appellants' brief at 15 n. 12. Thus, we agree with common pleas that the area in question is not exclusively residential.

Further, Appellants misconstrue the caselaw relied upon. Such cases do not stand for the proposition that any commercial use in a exclusively residential neighborhood automatically constitutes a nuisance *per se*. Rather, the cases address very specific uses, which because of certain recognized unavoidable inherent characteristics of the use make it injurious to health and property in certain locations. Thus, in *Menger*, the Court held that common pleas erred in concluding as a matter of law that a proposed motel in a residential area constituted a nuisance *per se*. Here, the area is not exclusively residential, and it cannot be said as a matter of law that a road course with related uses on a 350 acre tract constitutes a nuisance *per se*. Accordingly, we reject this argument.

■ Finally, Appellants raise a confusing argument regarding common pleas' failure to review their substantive challenge to the SALDO (i.e., that the SALDO violated Article I, Section 27 and the Trail Act because it permitted development which would impair the values of the Trail) in a *de novo* manner. Appellants point to common pleas statement that "we will not hear new evidence to decide Appellants' request for the appointment of a zoning hearing board," to support their argument that common pleas erroneously limited its consideration to the record generated before the Board. We disagree. Whether the appointment of a zoning hearing board was proper is a purely legal question not dependent on the development of a factual record. We discern no error in common pleas resolution of the matter. Clearly, common pleas considered the entire record because he accepted Alpine's evidence that

they could operate within the 5 decibel limit. Common pleas failure to make specific findings regarding Appellants' expert testimony and studies does not mean that such evidence was not considered.

Based upon the foregoing, the order of common pleas is affirmed in part and reversed in part and remanded for additional clarification regarding the locations where noise levels shall be monitored in order to determine compliance with the Board's condition.

### ORDER

AND NOW, this 1st day of February, 2005, the order of the Court of Common Pleas of Monroe County in the above captioned matter is hereby affirmed in part and reversed in part in accordance with the foregoing opinion. The matter is remanded to common pleas for further clarification regarding the locations were the noise levels will be monitored in order to determine compliance with the Board's condition.

Jurisdiction relinquished.