OPINION BY
JUDGE WOJCIK
City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) granting an emergency petition for preliminary injunction to allow the operation of a pop-up beer garden in a residential district in the City pending disposition of a use permit application. The City argues the trial court erred because the beer garden is a prohibited commercial use in a residential zone. Upon concluding reasonable grounds exist to uphold the preliminary injunction, we affirm.
I. Background
SPTR, Inc., Newbolds Brew, LLC, the American Sardine Bar, Inc., and the Point Breeze Fund, LLC (collectively, Appellees) are four commercial entities. The first three entities are licensed by the Pennsylvania Liquor Control Board (PLCB) to sell liquor. Point Breeze Fund, LLC, is a separate entity that owns a vacant lot in the City located at 1622-40 Point Breeze Avenue (Property), which is located in a residential, multi-family zone (RM-1).[1]
Appellees planned to operate a pop-up beer garden on the Property, which is an outdoor bar that sells beer, and food to customers on a seasonal basis. They acquired PLCB liquor licenses, off-premises catering permits, City Health Department permits, and City Department of Licenses and Inspections (L & I) permits to serve food and nonalcoholic beverages at the Property. Appellees also invested $30,000 to clear, clean and landscape the Property.
The pop-up beer garden officially opened in May 2015, The beer garden operates as a “membership party” and fundraiser for local charities. The beer garden operates' from May through September, during limited hours: Thursday from 5:00 p.m. to 10:00 p.m., Friday from 5:00 p.m. to 11:00 p.m., Saturday from 1:00 p.m. to 11:00 p.m., and Sunday from 1:00 p.m. to 10:00 p.m.
In June 2015, an L & I inspector inspected the beer garden and ascertained that the beer garden operated without a required zoning or use registration permit or zoning certification in violation of Title 14 of the Philadelphia Code (Zoning and Planning). On June 25, 2016, the inspector issued a “Notice of Intent to Cease Operations and Order” (Notice) informing Appel-lees that within 10 days a cease operations order would be issued unless they obtained a zoning permit. The Notice stated: “[Tjhese violations may pose a threat to the safety, health or welfare to the occupants or surrounding community and require immediate correction.” Reproduced Record (R.R.) at 49a. The Notice advised a cease operations order “can only be vacated by obtaining an immediate stay of enforcement as set out in the Administrative Code or correcting the cited violation and passing inspection” prior to the issuance of a cease operations order effective date. Id. It further directed appeal forms may be obtained from the Board of License and Inspection Review (L & I Board).
On June 29, 2015, L & I issued a final warning advising Appellees that the failure to correct the violation will require L & I to pursue additional enforcement action, including the assessment of fines in the amount of $150 to $2,000 per day. R.R. at 50a.
*164 On July 1, 2015, Appellees filed a zoning permit application with L & I to use the property as a beer garden, but they were informed the application had a “due date” of July 29, 2015, and would not be initially approved. Trial Court Opinion, 10/2/15, at 3. The application was subsequently denied.[2]
L & I then issued a cease operations order (Cease Order) directing Appellees to immediately cease all business operations and related occupancy at Property as of midnight on July 8, 2015. R.R. at 51a. Appellees attempted to appeal the Cease Order with the L & I Board, which was rejected.
Thereafter, Appellees filed a complaint in equity and an emergency petition for preliminary injunction with the trial court. Appellees alleged that the City, by issuing the Cease Order, violated their due process rights, caused them to suffer irreparable harm without an adequate remedy at law, unlawfully preempted licenses issued by the PLCB, and unlawfully commingled prosecutorial and adjudicatory functions.
The City opposed the emergency petition, but it did not file an answer to the complaint. The trial court issued a rule to show cause why the emergency petition should not be granted. After hearing evidence and arguments on the rule, the trial court granted the preliminary injunction, vacated the Cease Order, directed no further enforcement activity under the Cease Order shall occur until disposition of the zoning permit application, and required Appellees to post a bond in the amount of $500. Trial Court Order, 7/10/15.
The City then filed a notice of appeal in this Court, which automatically stayed the preliminary injunction. In response, Appel-lees filed an emergency petition for super-sedeas with the trial court, which the trial court granted, thereby allowing Appellees to continue operating their pop-up beer business on the Property during the pen-dency of the City’s appeal.
The trial court directed the City to file a statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), which it did. The trial court then issued an opinion in support of its order. The trial court determined the issues raised in the City’s Rule 1925(b) statement were waived for purposes of appeal because the City did not file an answer to Appellees’ complaint.[3]
Nevertheless, the trial court addressed the merits of the preliminary injunction. The trial court prefaced its discussion by noting there is little guidance on the procedure to acquire zoning permits for temporary uses. It also commented on the enduring and pervasive issue of vacant lots blighting the City, noting as many as 10 City agencies, including pest control, police and fire, are called upon to “upkeep” vacant lots. Trial Court Opinion, 10/2/15, at 9.
As to the merits, the trial court determined Appellees met all prerequisites for injunctive relief. Of relevance to this appeal, the trial court found that Appellees demonstrated a clear right to relief because L & I did not meet the criteria to issue the Cease Order. A cease operations order may be ordered only when a property owner engages in a use without one or *165 more required permits and either the missing permits are required to protect the public health or safety or the continued use creates a public nuisance. Trial Court Opinion at 10-11 (citing Section 14-306(l)(e)(.l) of the Philadelphia Code). The trial court found Appellees possessed the permits from the Health Department, PLCB and L & I, which are required to protect public'health and safety.
Significantly, the trial court found the operation of the beer garden did not create a public nuisance. The evidence presented showed that there had been no incidents requiring the police to be called to the premises. The State Police visited and found the beer garden in good standing. No threat to public safety existed. The latest the beer garden operated was until 11 p.m. on Saturday night. Local registered community organizations, including South Philadelphia Homes, supported the beer garden and benefited from its charity fundraising. Ultimately, the trial court opined Appellees’ use of the Property “as a beer garden, along with its fundraising efforts and expenditure put forth to clear the lot of trash, vermin, and other unsightly blight, was an improvement to the neighborhood,-, such development should be encouraged even on a temporary basis.” Trial Court Opinion at 9 (emphasis added). Upon determining Appellees met the prerequisites for injunctive relief, the trial court granted the preliminary injunction. This appeal now follows.
II. Issues
The City contends the trial court erred by granting injunctive relief. The City maintains L & I was authorized to shut down the operation because the beer garden is a prohibited commercial use in the RM-1 residential zone, Appellees do not have the required zoning permit to operate the beer garden, and its operation created a public nuisance in its residential location. Moreover, the City asserts the mere existence of a commercial beer garden in a residential zone amounts to a public nuisance per se.
III. Discussion
A. Clear Right to Relief
First, the City contends the trial court erred by granting injunctive relief because Appellees did not show a likelihood of success on the merits. Appellees are not entitled to operate a beer garden in the RM-1 residential zone without a zoning permit. Appellees cannot circumvent the zoning law by simply cleaning trash off of a vacant lot, selling food in a hygienic manner, and obtaining other permits for the sale of food and beverages. The possession of other permits does not obviate the need for a zoning permit or make a commercial use in a residential zone otherwise lawful. Without a permit, L & I was authorized to shut the beer garden down under the Philadelphia Code.
Preliminary injunctive relief is an equitable remedy available in equity actions. Barcia v. Fenlon, 37 A.3d 1, 6 (Pa. Cmwlth. 2012). “A preliminary injunction is designed, to preserve the subject of the controversy in the condition in which it is when the order is made, it is not to. subvert, but to maintain the existing status quo until the legality of the challenged conduct can be determined on the merits.” Greater Nanticoke Area Education Association v. Greater Nanticoke Area School District, 938 A.2d 1177, 1183 (Pa. Cmwlth. 2007).
Our review of a trial court’s order granting or denying preliminary in-junctive relief is “highly deferential.” Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc., 573 Pa. 637, 828 A.2d 995, 1000 (2003). “[W]e do not inquire into the merits of the controversy, but only *166 examine the record to determine if there were any apparently reasonable grounds for the action of the court below.” Id. (quoting Roberts v. Board of Directors of School District, 462 Pa. 464, 341 A.2d 475, 478 (1975)). Only when it is clear no grounds exist to support the decree, or the rule of law was “palpably erroneous or misapplied,” will such order be reversed. Id.; accord Novak v. Commonwealth, 514 Pa. 190, 523 A.2d 318, 319 (1987). Such reasonable grounds exist when the essential prerequisites for the granting of an injunction are met. Summit Towne, 828 A.2d at 1000.
There are six essential prerequisites a party must establish before obtaining preliminary injunctive relief:
(1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending' activity; and, (6) the preliminary injunction will not adversely affect the public interest.
SEIU Healthcare Pennsylvania v. Commonwealth, 628 Pa. 573, 104 A.3d 495, 502 (2014) (citing Warehime v, Warehime, 580 Pa. 201, 860 A.2d 41, 46-47 (2004)). Because the grant of a preliminary injunction is an extraordinary remedy, the failure to establish a single prerequisite requires the denial of the request for injunction. Summit Towne, 828 A.2d at 1000.
With regard to the clear right to relief criterion, which is the sole focus of this appeal, we examine the provisions of the Philadelphia Code. Section 14-104(1) of the Philadelphia Code provides “[a]ll development and every principal and accessory use conducted within a structure or on a lot must conform with this Philadelphia Code.” No land may be used in the City “except in accordance with all of the applicable regulations established by this Philadelphia Code, unless otherwise expressly stated, and, except for single-family x-esidential uses, without first obtaining a use registration or zoning permit from L & I in accordance with the procedures set forth in § 14-303(6) (Zoning Permits).” Section 14-104(2) of the Philadelphia Code. Eating and drinking establishments fall into the category of “commercial services use,” which is not identified as a permitted use in the RM-1 residential disteict. See Sections 14-601(7)(f) and 14-602(3) of the Philadelphia Code.
The Philadelphia Code bestows certain enforcement powers to L & I. Section 14-306 of the Philadelphia Code. Of relevance here:
L & I may issue a cease operations order directing that occupancy, use, and other activities cease immediately, and that the premises be vacated pending compliance with the cease operations order whenever (1) any occupancy, use, or other activity is being performed in or on any building, structure, or land without one or more required permits or special exceptions, and either (2) the missing permits or special exceptions are required to protect public health or safety, or (3) the continued occupancy, use, or activity without the required permits or special exceptions is creating a public nuisance.
Section 14—306(1)(e)(.1) (emphasis added).,
A property owner creates a “public nuisance’- by unreasonably inter *167 fering with the rights of his neighbors and the local community. Muehlieb v. City of Philadelphia, 133 Pa.Cmwlth. 133, 574 A.2d 1208, 1209 (1990). “A public nuisance is an inconvenience or troublesome offense that annoys the whole community in general, and not-merely some particular person, and produces no greater injury to- one person than to another—acts that are against the well-being of the particular community—and is not- dependent upon covenants.” Blue Mountain Preservation Association v. Eldred, 867 A.2d 692, 704 (Pa. Cmwlth. 2005) (quoting Groff v. Borough of Sellersville, 12 Pa.Cmwlth. 315, 314 A.2d 328, 330 (1974)). A nuisance “affects health, safety or morals.” Id. at 705 (quoting Menger v. Pass, 367 Pa. 432, 80 A.2d 702, 703 (1951)).
Here, although the Philadelphia Code does not address temporary uses, such as seasonal beer gardens, it clearly provides no land may be used, with the exception of single-family residential uses, without first obtaining a zoning permit. Section 14-104(2) of the Philadelphia Code. Appellees applied for a permit and are in the appeal process, but do not possess a zoning permit to operate a beer garden. Appellees’ possession of other permits or licenses for the sale of food and beverages, including alcohol, does not give them a right to operate in a particular area of the City. Consequently, L & I met the first criterion of Section 14-306(1)(e)(.1) of the Philadelphia Code.
Notwithstanding, in order for L & I to issue a cease operations order, it was required to show that either the missing permit is required “to protect public health or safety” or the continued use “is creating a public nuisance.” Section 14-306(l)(e)(.l) of the Philadelphia Code. The trial court found L & I did not satisfy either criterion.
First, with regard to public health and safety, the trial court found Appellees have the appropriate health inspection licenses .and catering licenses for the sale of food and beverages on the Property. Such permits, protect the public by ensuring a safe and healthy food supply. Appellees also possess licenses from the PLCB to sell alcohol off-premises, which protects the public by regulating the sale of alcohol. A zoning permit authorizing Appellees to serve otherwise permitted food and beverages, in a particular location, is not necessary to protect public health or safety.
Second, the trial court found that the “continued” operation of the beef garden without the required zoning permit ⅛ not “creating a public nuisance.” Section 14-306(l)(e)(.l) of the Philadelphia Code (emphasis added). The police were never called to the beer garden. When the State Police visited, they found the beer garden in good standing. The beer garden is only open four days a week, from May to September, with limited hours of operation and a maximum closing time of 11 p.m. Prior to its use as a beer garden, the Property was a vacant, trash-strewn lot. Appellees cleaned off the lot and landscaped it at their own expense, to the tune of $30,000. Appellees donate a portion of their proceeds to several local charitable organizations.
Significantly, no evidence was offered that the pop-up beer garden is “an inconvenience or troublesome offense that annoys the whole community.” See Blue Mountain, 867 A.2d at 704. In fact, the trial court, found that the operation of the pop-up beer garden was beneficial to the well-being of the community because Ap-pellees improved an otherwise blighted lot and put it to a use that benefits charitable endeavors. Thus, the trial court determined the beer garden was not a nuisance in fact. On this basis, the trial court con- *168 eluded Appellees showed a clear right to relief because L & I did not meet the prerequisites to issue a cease operations order under the Philadelphia Code. As the other elements for preliminary injunction are not in dispute, the record contains “apparently reasonable grounds” to support the preliminary injunction during the pendency of the zoning appeal.
B. Public Nuisance per se
The City contends the trial court erred in granting the preliminary injunction because the beer garden is a public nuisance per se. When a commercial use is permitted, and the City seeks to enjoin that use, the City must show that the current operation of that business amounts to a nuisance in fact. However, when a commercial use is prohibited, it is a nuisance per se. The use of the Property as a commercial beer garden is not a permitted use in RM-1 residential districts. As such, the City maintains it is a nuisance per se. Thus, the City maintains it did not need to show that the prohibited use was a nuisance in fact. According to the City, it does not matter how the beer garden is conducted- because it is a nuisance per se as to its residential location and surroundings. The harm inherent in the use of a residential property as a prohibited commercial enterprise formed the proper basis for L & I’s Cease Order.
Appellees counter the City waived this argument by not raising it before the trial court. Notwithstanding, Appellees argue a commercial use in a residential zone does not automatically constitute a nuisance per se.
We first address Appellees’ waiver claim. Pursuant to Pa. R.A.P. 302, issues not raised in the trial court are waived and cannot be raised for the first time on appeal. Moreover, issues not included in the 1925(b) Statement are also waived. Pa. R.A.P. 1925(b)(4)(vii).
Upon review of the record, the City never uttered the phrase “nuisance per se” at the preliminary injunction hearing or otherwise made this legal argument to the trial court. Furthermore, there is no reference to “nuisance per se” anywhere in the City’s 1925(b) Statement. Consequently, the trial court did not address-the nuisance per se issue and instead analyzed whether the use created a public nuisance in fact. Although the City did not expressly raise the per se issue, we decline to find waiver because the City raised the broad issue of nuisance and we believe that issue fairly embraces the subsidiary issues of nuisance per se and nuisance in fact.
Nevertheless, we find the City’s nuisance per se arguments unavailing. The City maintains that the operation of a beer garden in a residential district without a permit is a nuisance per se justifying its cease operations order. However, in order for L & I to properly issue a cease operations order pursuant to its authority under Section 14-306(l)(e)(.l) of the Philadelphia Code, L & I must satisfy two prongs. It cannot satisfy the nuisance criterion by simply showing lack of a permit. Rather, L & I must also show that the “continued” use, without a permit, “is creating a public nuisance.” Section 14-306(l)(e)(.l) of the Philadelphia Code. To interpret this provision otherwise, would nullify the latter provision of this section.[4]
*169 Insofar as the City argues the sale of alcohol in a residential area constitutes a nuisance per se, this argument lacks legal support. “Whether the courts may determine a given act a nuisance, or whether, within certain uniform conditions, they may hold it a nuisance per se, depends on the evidence showing the necessary relation between the acts or repeated acts and the basic principles which underlie nuisances.” Nesbit v. Riesenman, 298 Pa. 475, 148 A. 695, 697 (1930). Typically, “a nuisance per se is an act which is a nuisance at all times and at all places.” Id. at 697. “[C]ertain types of business, by the necessary incidents of their normal operation, deleteriously affect the health and comfort of the community, [and] their establishment in residential districts has been held to constitute a nuisance as a matter of law.” Menger, 80 A.2d at 703.
Indeed, our Supreme Court has described a “nuisance per se” as:
an act or use of property of a . continuing nature offensive to, and legally injurious to, health and property, or both. A given condition may be, at all times and places, a nuisance per se. As related to business, its inherent qualities or elements must be such that it must reasonably follow, in a particular locality or surrounding, that there will be an injury to property or a discomfort to the individual, with a resulting injury to property. The difference between a business, which, no matter how it is conducted, is a nuisance per se as to certain location and surrounding, and a business which is being so conducted as to become a nuisance, lies in the proof, not in the remedy.
Pennsylvania Co. for Insurance on Lives and Granting Annuities v. Sun Co., 290 Pa. 404, 138 A. 909, 910-11 (1927).
The Court continued, “[a] given business is in itself a nuisance per se when it is generally known to be injurious to health and to cause legal damage to property in certain localities and surroundings, regardless of how it may be carried on.” Id. at 911. The Supreme Court described the following circumstances attending a business or property give rise to a nuisance per se-. “Offensive or noxious odors or smells, undue noise of crowds, music, motors, gambling, improper construction of buildings, and the like, that are injurious to morals, life, health, and property.” Id.
In addition, the law has determined that some businesses are, under certain conditions, nuisances per se because of location and surroundings. Id. at 911. For example, locating a commercial business, such as a gas and service station, a fast food chain or public garage, in a purely residential neighborhood may constitute nuisance per se. Blue Mountain, 867 A.2d at 704; see Menger, 80 A.2d at 703; see, e.g., Nesbit, 148 A. at 698 (public garage in exclusively residential district is a nuisance per se); Edmunds v. Duff, 280 Pa. 355, 124 A. 489, 492 (1924) (an amusement park near dwellings is a nuisance per se because of attendant crowds, music, and noise until late at night, and other detractions); Eckels v. Weibley, 232 Pa. 547, 81 A. 645, 646 (1911) (a cattle stockyard in a residential section was a nuisance per se); Evans v. Reading Chemical and Fertilizing Co., 160 Pa. 209, 28 A. 702 (1894) (the manufacture of bone fertilizer was held to be a nuisance per se because noxious odors and offensive smells were inseparable from the manufacture).
However, a commercial use in an exclusively residential area does not automatically render it a nuisance per se. Blue Mountain, 867 A.2d at 704; see also *170 Daniels v. Notor, 389 Pa. 510, 133 A.2d 520, 525 (1957) (a motel located within a strictly residential neighborhood is not a nuisance per se). Only where “certain recognized unavoidable inherent characteristics of the use make it injurious to health and property in certain locations,” may it be enjoined as a matter of law. Id.
Relying on Reid v. Brodsky, 397 Pa. 463, 156 A.2d 334, 336 (1959), the City contends the sale of alcohol in a residential neighborhood amounts to a nuisance per se. However, the case does not support this proposition. In Reid, our Supreme Court considered whether an injunction was properly entered against a taproom that was approved by a zoning board. In dicta, the Court observed “the operation of a restaurant in which liquor and malt or brewed beverages are sold, duly licensed by the [PLCB], is a lawful business and, even though located in a residential district, is not a nuisance per se.” Id. at 337 (emphasis added). Because the taproom was a permitted use under the zoning ordinance, its operation could only be enjoined if it was a nuisance in fact. Id. Ultimately, the court enjoined the use of the taproom in question upon finding it was a nuisance in fact because it “disturbed the peace and quiet of this residential area and affronted the sensibilities of [residents] endeavoring to maintain in this urban area a decent, clean and wholesome environment in which to live and rear their families." Id. at 339.
The City also relies on Diehl v. Lockard, 254 Pa.Super. 111, 385 A.2d 550 (1978), in support of its position that the sale of beer and wine is a nuisance per se. In Diehl, residents were granted a preliminary injunction to enjoin construction of a commercial fast food establishment in a zoned residential area as a nuisance per se. The trial court found that:
To permit construction of the premises would result in such noise, fumes, smells, dust and lights that the normal enjoyment of property surrounding the proposed construction and located within that residential area ... would be unduly disrupted. Rest and sleep would be [ajffected and the increase in traffic would be a danger to residents and especially the children of the area. In addition, the service of beer and wine, a venture previously excluded from the area, would present an additional possibility of danger. The particular character of the ... neighborhood should be maintained and a ‘Pizza Hut’ under the circumstances presented here would be out of keeping with the character of the neighborhood, and for the reasons set forth above, a nuisance per se.
Id. at 551.
On appeal, the enjoined property owner argued the injunction was premature and that residents should await the construction of the “Pizza Hut” and then bring their action after they experience the activity of the restaurant to establish a nuisance. The Superior Court disagreed and determined allowing construction “would prevent ... efforts to keep [the] area residential.” 385 A.2d at 551, Because reasonable grounds existed that the construction and operation of a fast food restaurant in a purely residential neighborhood would alter the character of the community and constitute a nuisance per se, the Superior Court concluded that the trial court did not abuse its discretion in granting the injunction to preclude the use. Id. Contrary to the City’s assertions, Diehl does not hold that the sale of beer and wine is a nuisance per se. Rather, the opinion merely noted that the service of beer and wine presented “an additional possibility of dange'r” when combined with the attendant harms of noise, fumes, smells, dust, lights, and increased traffic that rendered the use *171 a nuisance per se. Id. at 551 (emphasis added).
Here, although the beer garden is located in a residential community, its mere existence in the residential area does not automatically render it a nuisance per se: See Blue Mountain. In order to declare the use of the Property as a beer garden a nuisance per se, it still must have certain recognized, unavoidable, inherent characteristics that make it injurious to health and property. See id. Although our courts have recognized inherent problems resulting from the sale and consumption of alcoholic beverages, they have not declared the sale, service or consumption of alcoholic beverages a nuisance per se. See Vernon Township Volunteer Fire Department, Inc. v. Connor, 579 Pa. 364, 855 A.2d 873, 882 (2004); Reid; Diehl. We decline to make such a declaration in this case.
IY. Conclusion
For these reasons, we conclude the trial court did not abuse its discretion or misapply the law in finding “apparently reasonable grounds” exist to support Appellees’ preliminary injunction where L & I did not meet the prerequisites to issue a cease operations order under the Philadelphia Code,
Accordingly, we affirm.
ORDER
AND NOW, this 21st day of November, 2016, the order of the Court of Common Pleas of Philadelphia County, dated July 10, 2015, is AFFIRMED.

. John Longacre is the principal of Point Breeze Fund, LLC, and he owns the liquor licenses for and possesses ownership interest in the other entities.

. Appellees appealed the denial to the Philadelphia Zoning Board of Adjustment; the appeal is pending. Appellees' Brief at 10; Appellant's Brief at 12 n.l.

. Although the City did not file an answer to the complaint, it responded to the emergency petition for preliminary injunction. In so doing, the City preserved its challenges, to the preliminary injunction order. See Levin v. St. Peter's School, 134 Pa.Cmwlth. 342, 578 A.2d 1349, 1352 (1990).

. Although the Statutory Construction Act, 1 Pa. C.S. §§ 1921-1939, is not expressly applicable to the construction of local ordinances, the rules of statutory construction are applicable to statutes and ordinances alike. Council of Middletown Township v. Benham, 514 Pa. 176, 523 A.2d 311, 315 (1987); In re Thompson, 896 A.2d 659, 668 (Pa. Cmwlth. 2006), appeal denied, 591 Pa. 669, 916 A.2d 636 (2007). "One of the primary rules of statutory construction is that an ordinance must be construed, if possible, to give effect to *169 all of its provisions.” Thompson, 896 A.2d at 668. "An interpretation of an ordinance which prodúces an absurd result is contrary to the rules of statutory construction.” Id.