IN THE COMMONWEALTH COURT OF PENNSYLVANIA

SPTR, Inc., Newbolds Brew LLC,   :
The American Sardine Bar, Inc.,   : No. 1264 C.D. 2015
and the Point Breeze Fund LLC   : Argued: May 12, 2016
  :
  :
v.   :
  :
City of Philadelphia,   :
                Appellant   :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION
BY JUDGE WOJCIK                         FILED: November 21, 2016


City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) granting an emergency petition for preliminary injunction to allow the operation of a pop-up beer garden in a residential district in the City pending disposition of a use permit application. The City argues the trial court erred because the beer garden is a prohibited commercial use in a residential zone. Upon concluding reasonable grounds exist to uphold the preliminary injunction, we affirm.

## I. Background

SPTR, Inc., Newbolds Brew, LLC, the American Sardine Bar, Inc., and the Point Breeze Fund, LLC (collectively, Appellees) are four commercial entities. The first three entities are licensed by the Pennsylvania Liquor Control Board (PLCB) to sell liquor. Point Breeze Fund, LLC, is a separate entity that

owns a vacant lot in the City located at 1622-40 Point Breeze Avenue (Property), which is located in a residential, multi-family zone (RM-1).[1]

Appellees planned to operate a pop-up beer garden on the Property, which is an outdoor bar that sells beer and food to customers on a seasonal basis. They acquired PLCB liquor licenses, off-premises catering permits, City Health Department permits, and City Department of Licenses and Inspections (L&I) permits to serve food and nonalcoholic beverages at the Property. Appellees also invested $30,000 to clear, clean and landscape the Property.

The pop-up beer garden officially opened in May 2015. The beer garden operates as a "membership party" and fundraiser for local charities. The beer garden operates from May through September, during limited hours: Thursday from 5:00 p.m. to 10:00 p.m., Friday from 5:00 p.m. to 11:00 p.m., Saturday from 1:00 p.m. to 11:00 p.m., and Sunday from 1:00 p.m. to 10:00 p.m.

In June 2015, an L&I inspector inspected the beer garden and ascertained that the beer garden operated without a required zoning or use registration permit or zoning certification in violation of Title 14 of the Philadelphia Code (Zoning and Planning). On June 25, 2016, the inspector issued a "Notice of Intent to Cease Operations and Order" (Notice) informing Appellees that within 10 days a cease operations order would be issued unless they obtained a zoning permit. The Notice stated: "[T]hese violations may pose a threat to the safety, health or welfare to the occupants or surrounding community and require immediate correction." Reproduced Record (R.R.) at 49a. The Notice advised a cease operations order "can only be vacated by obtaining an immediate stay of

---

[1] John Longacre is the principal of Point Breeze Fund, LLC, and he owns the liquor licenses for and possesses ownership interest in the other entities.

2

enforcement as set out in the Administrative Code or correcting the cited violation and passing inspection" prior to the issuance of a cease operations order effective date. *Id*. It further directed appeal forms may be obtained from the Board of License and Inspection Review (L&I Board).

On June 29, 2015, L&I issued a final warning advising Appellees that the failure to correct the violation will require L&I to pursue additional enforcement action, including the assessment of fines in the amount of $150 to $2,000 per day. R.R. at 50a.

On July 1, 2015, Appellees filed a zoning permit application with L&I to use the property as a beer garden, but they were informed the application had a "due date" of July 29, 2015, and would not be initially approved. Trial Court Opinion, 10/2/15, at 3. The application was subsequently denied.[2]

L&I then issued a cease operations order (Cease Order) directing Appellees to immediately cease all business operations and related occupancy at Property as of midnight on July 8, 2015. R.R. at 51a. Appellees attempted to appeal the Cease Order with the L&I Board, which was rejected.

Thereafter, Appellees filed a complaint in equity and an emergency petition for preliminary injunction with the trial court. Appellees alleged that the City, by issuing the Cease Order, violated their due process rights, caused them to suffer irreparable harm without an adequate remedy at law, unlawfully preempted licenses issued by the PLCB, and unlawfully commingled prosecutorial and adjudicatory functions.

---

[2] Appellees appealed the denial to the Philadelphia Zoning Board of Adjustment; the appeal is pending. Appellees' Brief at 10; Appellant's Brief at 12 n.1.

3

The City opposed the emergency petition, but it did not file an answer to the complaint. The trial court issued a rule to show cause why the emergency petition should not be granted. After hearing evidence and arguments on the rule, the trial court granted the preliminary injunction, vacated the Cease Order, directed no further enforcement activity under the Cease Order shall occur until disposition of the zoning permit application, and required Appellees to post a bond in the amount of $500. Trial Court Order, 7/10/15.

The City then filed a notice of appeal in this Court, which automatically stayed the preliminary injunction. In response, Appellees filed an emergency petition for supersedeas with the trial court, which the trial court granted, thereby allowing Appellees to continue operating their pop-up beer business on the Property during the pendency of the City's appeal.

The trial court directed the City to file a statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), which it did. The trial court then issued an opinion in support of its order. The trial court determined the issues raised in the City's Rule 1925(b) statement were waived for purposes of appeal because the City did not file an answer to Appellees' complaint.[3]

Nevertheless, the trial court addressed the merits of the preliminary injunction. The trial court prefaced its discussion by noting there is little guidance on the procedure to acquire zoning permits for temporary uses. It also commented on the enduring and pervasive issue of vacant lots blighting the City, noting as

---

[3] Although the City did not file an answer to the complaint, it responded to the emergency petition for preliminary injunction. In so doing, the City preserved its challenges to the preliminary injunction order. *See Levin v. St. Peter's School*, 578 A.2d 1349, 1352 (Pa. Cmwlth. 1990).

4

many as 10 City agencies, including pest control, police and fire, are called upon to "upkeep" vacant lots. Trial Court Opinion, 10/2/15, at 9.

As to the merits, the trial court determined Appellees met all prerequisites for injunctive relief. Of relevance to this appeal, the trial court found that Appellees demonstrated a clear right to relief because L&I did not meet the criteria to issue the Cease Order. A cease operations order may be ordered only when a property owner engages in a use without one or more required permits and either the missing permits are required to protect the public health or safety or the continued use creates a public nuisance. Trial Court Opinion at 10-11 (citing Section 14-306(1)(e)(.1) of the Philadelphia Code). The trial court found Appellees possessed the permits from the Health Department, PLCB and L&I, which are required to protect public health and safety.

Significantly, the trial court found the operation of the beer garden did not create a public nuisance. The evidence presented showed that there had been no incidents requiring the police to be called to the premises. The State Police visited and found the beer garden in good standing. No threat to public safety existed. The latest the beer garden operated was until 11 p.m. on Saturday night. Local registered community organizations, including South Philadelphia Homes, supported the beer garden and benefited from its charity fundraising. Ultimately, the trial court opined Appellees' use of the Property "as a beer garden, along with its fundraising efforts and expenditure put forth to clear the lot of trash, vermin, and other unsightly blight, was *an improvement to the neighborhood*; such development should be encouraged even on a temporary basis." Trial Court Opinion at 9 (emphasis added). Upon determining Appellees met the prerequisites

5

for injunctive relief, the trial court granted the preliminary injunction. This appeal now follows.

## II. Issues

The City contends the trial court erred by granting injunctive relief. The City maintains L&I was authorized to shut down the operation because the beer garden is a prohibited commercial use in the RM-1 residential zone, Appellees do not have the required zoning permit to operate the beer garden, and its operation created a public nuisance in its residential location. Moreover, the City asserts the mere existence of a commercial beer garden in a residential zone amounts to a public nuisance *per se*.

## III. Discussion
### A. Clear Right to Relief

First, the City contends the trial court erred by granting injunctive relief because Appellees did not show a likelihood of success on the merits. Appellees are not entitled to operate a beer garden in the RM-1 residential zone without a zoning permit. Appellees cannot circumvent the zoning law by simply cleaning trash off of a vacant lot, selling food in a hygienic manner, and obtaining other permits for the sale of food and beverages. The possession of other permits does not obviate the need for a zoning permit or make a commercial use in a residential zone otherwise lawful. Without a permit, L&I was authorized to shut the beer garden down under the Philadelphia Code.

Preliminary injunctive relief is an equitable remedy available in equity actions. *Barcia v. Fenlon*, 37 A.3d 1, 6 (Pa. Cmwlth. 2012). "A preliminary injunction is designed to preserve the subject of the controversy in the condition in which it is when the order is made, it is not to subvert, but to maintain the existing status quo until the legality of the challenged conduct can be determined on the

6

merits." *Greater Nanticoke Area Education Association v. Greater Nanticoke Area School District*, 938 A.2d 1177, 1183 (Pa. Cmwlth. 2007).

Our review of a trial court's order granting or denying preliminary injunctive relief is "highly deferential." *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000 (Pa. 2003). "[W]e do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Id.* (quoting *Roberts v. Board of Directors of School District*, 341 A.2d 475, 478 (Pa. 1975)). Only when it is clear no grounds exist to support the decree, or the rule of law was "palpably erroneous or misapplied," will such order be reversed. *Id.*; *accord Novak v. Commonwealth*, 523 A.2d 318, 319 (Pa. 1987). Such reasonable grounds exist when the essential prerequisites for the granting of an injunction are met. *Summit Towne*, 828 A.2d at 1000.

There are six essential prerequisites a party must establish before obtaining preliminary injunctive relief:

> (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and, (6) the preliminary injunction will not adversely affect the public interest.

*SEIU Healthcare Pennsylvania v. Commonwealth*, 104 A.3d 495, 502 (Pa. 2014) (citing *Warehime v. Warehime*, 860 A.2d 41, 46-47 (Pa. 2004)). Because the grant

of a preliminary injunction is an extraordinary remedy, the failure to establish a single prerequisite requires the denial of the request for injunction. *Summit Towne*, 828 A.2d at 1000.

With regard to the clear right to relief criterion, which is the sole focus of this appeal, we examine the provisions of the Philadelphia Code. Section 14-104(1) of the Philadelphia Code provides "[a]ll development and every principal and accessory use conducted within a structure or on a lot must conform with this Philadelphia Code." No land may be used in the City "except in accordance with all of the applicable regulations established by this Philadelphia Code, unless otherwise expressly stated, and, except for single-family residential uses, without first obtaining a use registration or zoning permit from L&I in accordance with the procedures set forth in § 14-303(6) (Zoning Permits)." Section 14-104(2) of the Philadelphia Code. Eating and drinking establishments fall into the category of "commercial services use," which is not identified as a permitted use in the RM-1 residential district. *See* Sections 14-601(7)(f) and 14-602(3) of the Philadelphia Code.

The Philadelphia Code bestows certain enforcement powers to L&I. Section 14-306 of the Philadelphia Code. Of relevance here:

> L&I may issue a cease operations order directing that occupancy, use, and other activities cease immediately, and that the premises be vacated pending compliance with the cease operations order *whenever* (1) any occupancy, use, or other activity is being performed in or on any building, structure, or land without one or more required permits or special exceptions, *and either* (2) the missing permits or special exceptions are required *to protect public health or safety*, *or* (3) *the continued* occupancy, use, or activity without the required permits or special exceptions is *creating a public nuisance*.

8

Section 14-306(1)(e)(.1) (emphasis added).

A property owner creates a "public nuisance" by unreasonably interfering with the rights of his neighbors and the local community. *Muehlieb v. City of Philadelphia*, 574 A.2d 1208, 1209 (Pa. Cmwlth. 1990). "A public nuisance is an inconvenience or troublesome offense that annoys the whole community in general, and not merely some particular person, and produces no greater injury to one person than to another--acts that are against the well-being of the particular community--and is not dependent upon covenants." *Blue Mountain Preservation Association v. Eldred*, 867 A.2d 692, 704 (Pa. Cmwlth. 2005) (quoting *Groff v. Borough of Sellersville*, 314 A.2d 328, 330 (Pa. Cmwlth. 1974)). A nuisance "affects health, safety or morals." *Id.* at 705 (quoting *Menger v. Pass*, 80 A.2d 702, 703 (Pa. 1951)).

Here, although the Philadelphia Code does not address temporary uses, such as seasonal beer gardens, it clearly provides no land may be used, with the exception of single-family residential uses, without first obtaining a zoning permit. Section 14-104(2) of the Philadelphia Code. Appellees applied for a permit and are in the appeal process, but do not possess a zoning permit to operate a beer garden. Appellees' possession of other permits or licenses for the sale of food and beverages, including alcohol, does not give them a right to operate in a particular area of the City. Consequently, L&I met the first criterion of Section 14-306(1)(e)(.1) of the Philadelphia Code.

Notwithstanding, in order for L&I to issue a cease operations order, it was required to show that *either* the missing permit is required "to protect public health or safety" or the continued use "is creating a public nuisance." Section 14-

9

306(1)(e)(.1) of the Philadelphia Code.  The trial court found L&I did not satisfy either criterion.

First, with regard to public health and safety, the trial court found Appellees have the appropriate health inspection licenses and catering licenses for the sale of food and beverages on the Property.  Such permits protect the public by ensuring a safe and healthy food supply.  Appellees also possess licenses from the PLCB to sell alcohol off-premises, which protects the public by regulating the sale of alcohol.  A zoning permit authorizing Appellees to serve otherwise permitted food and beverages, in a particular location, is not necessary to protect public health or safety.

Second, the trial court found that the "continued" operation of the beer garden without the required zoning permit is not "*creating* a public nuisance." Section 14-306(1)(e)(.1) of the Philadelphia Code (emphasis added).  The police were never called to the beer garden.  When the State Police visited, they found the beer garden in good standing.  The beer garden is only open four days a week, from May to September, with limited hours of operation and a maximum closing time of 11 p.m.  Prior to its use as a beer garden, the Property was a vacant, trash-strewn lot.  Appellees cleaned off the lot and landscaped it at their own expense, to the tune of $30,000.  Appellees donate a portion of their proceeds to several local charitable organizations.

Significantly, no evidence was offered that the pop-up beer garden is "an inconvenience or troublesome offense that annoys the whole community." *See Blue Mountain*, 867 A.2d at 704.  In fact, the trial court found that the operation of the pop-up beer garden was beneficial to the well-being of the community because Appellees improved an otherwise blighted lot and put it to a use that benefits

10

charitable endeavors. Thus, the trial court determined the beer garden was not a nuisance in fact. On this basis, the trial court concluded Appellees showed a clear right to relief because L&I did not meet the prerequisites to issue a cease operations order under the Philadelphia Code. As the other elements for preliminary injunction are not in dispute, the record contains "apparently reasonable grounds" to support the preliminary injunction during the pendency of the zoning appeal.

### B. Public Nuisance *per se*

The City contends the trial court erred in granting the preliminary injunction because the beer garden is a public nuisance *per se*. When a commercial use is permitted, and the City seeks to enjoin that use, the City must show that the current operation of that business amounts to a nuisance in fact. However, when a commercial use is prohibited, it is a nuisance *per se*. The use of the Property as a commercial beer garden is not a permitted use in RM-1 residential districts. As such, the City maintains it is a nuisance *per se*. Thus, the City maintains it did not need to show that the prohibited use was a nuisance in fact. According to the City, it does not matter how the beer garden is conducted because it is a nuisance *per se* as to its residential location and surroundings. The harm inherent in the use of a residential property as a prohibited commercial enterprise formed the proper basis for L&I's Cease Order.

Appellees counter the City waived this argument by not raising it before the trial court. Notwithstanding, Appellees argue a commercial use in a residential zone does not automatically constitute a nuisance *per se*.

We first address Appellees' waiver claim. Pursuant to Pa. R.A.P. 302, issues not raised in the trial court are waived and cannot be raised for the first time

11

on appeal. Moreover, issues not included in the 1925(b) Statement are also waived. Pa. R.A.P. 1925(b)(4)(vii).

Upon review of the record, the City never uttered the phrase "nuisance *per se*" at the preliminary injunction hearing or otherwise made this legal argument to the trial court. Furthermore, there is no reference to "nuisance *per se*" anywhere in the City's 1925(b) Statement. Consequently, the trial court did not address the nuisance *per se* issue and instead analyzed whether the use created a public nuisance in fact. Although the City did not expressly raise the *per se* issue, we decline to find waiver because the City raised the broad issue of nuisance and we believe that issue fairly embraces the subsidiary issues of nuisance *per se* and nuisance in fact.

Nevertheless, we find the City's nuisance *per se* arguments unavailing. The City maintains that the operation of a beer garden in a residential district without a permit is a nuisance *per se* justifying its cease operations order. However, in order for L&I to properly issue a cease operations order pursuant to its authority under Section 14-306(1)(e)(.1) of the Philadelphia Code, L&I must satisfy two prongs. It cannot satisfy the nuisance criterion by simply showing lack of a permit. Rather, L&I must also show that the "continued" use, without a permit, "is creating a public nuisance." Section 14-306(1)(e)(.1) of the Philadelphia Code. To interpret this provision otherwise, would nullify the latter provision of this section.[4]

---

[4] Although the Statutory Construction Act, 1 Pa. C.S. §§1921-1939, is not expressly applicable to the construction of local ordinances, the rules of statutory construction are applicable to statutes and ordinances alike. *Council of Middletown Township v. Behham*, 523 A.2d 311, 315 (Pa. 1987); *In re Thompson*, 896 A.2d 659, 668 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 636 (2007). "One of the primary rules of statutory construction is that an ordinance must be construed, if possible, to give effect to all of its provisions." *Thompson*,

**(Footnote continued on next page…)**

12

Insofar as the City argues the sale of alcohol in a residential area constitutes a nuisance *per se*, this argument lacks legal support. "Whether the courts may determine a given act a nuisance, or whether, within certain uniform conditions, they may hold it a nuisance *per se*, depends on the evidence showing the necessary relation between the acts or repeated acts and the basic principles which underlie nuisances." *Nesbit v. Riesenman*, 148 A. 695, 697 (Pa. 1930). Typically, "a nuisance *per se* is an act which is a nuisance at all times and at all places." *Id.* at 697. "[C]ertain types of business, by the necessary incidents of their normal operation, deleteriously affect the health and comfort of the community, [and] their establishment in residential districts has been held to constitute a nuisance as a matter of law." *Menger*, 80 A.2d at 703.

> Indeed, our Supreme Court has described a "nuisance *per se*" as:
>
> an act or use of property of a continuing nature offensive to, and legally injurious to, health and property, or both. A given condition may be, at all times and places, a nuisance *per se*. As related to business, its inherent qualities or elements must be such that it must reasonably follow, in a particular locality or surrounding, that there will be an injury to property or a discomfort to the individual, with a resulting injury to property. The difference between a business, which, no matter how it is conducted, is a nuisance *per se* as to certain location and surrounding, and a business which is being so conducted as to become a nuisance, lies in the proof, not in the remedy.

---

**(continued…)**

896 A.2d at 668. "An interpretation of an ordinance which produces an absurd result is contrary to the rules of statutory construction." *Id.*

13

*Pennsylvania Co. for Insurance on Lives and Granting Annuities v. Sun Co.*, 138 A. 909, 910-11 (Pa. 1927).

The Court continued, "[a] given business is in itself a nuisance *per se* when it is generally known to be injurious to health and to cause legal damage to property in certain localities and surroundings, regardless of how it may be carried on." *Id*. at 911. The Supreme Court described the following circumstances attending a business or property give rise to a nuisance *per se*: "Offensive or noxious odors or smells, undue noise of crowds, music, motors, gambling, improper construction of buildings, and the like, that are injurious to morals, life, health, and property." *Id*.

In addition, the law has determined that some businesses are, under certain conditions, nuisances *per se* because of location and surroundings. *Id*. at 911. For example, locating a commercial business, such as a gas and service station, a fast food chain or public garage, in a purely residential neighborhood may constitute nuisance *per se*. *Blue Mountain*, 867 A.2d at 704; *see Menger*, 80 A.2d at 703; *see, e.g., Nesbit,* 148 A. at 698 (public garage in exclusively residential district is a nuisance *per se*); *Edmunds v. Duff*, 124 A. 489, 492 (Pa. 1924) (an amusement park near dwellings is a nuisance *per se* because of attendant crowds, music, and noise until late at night, and other detractions); *Eckels v. Weibley*, 81 A. 645, 646 (Pa. 1911) (a cattle stockyard in a residential section was a nuisance *per se*); *Evans v. Reading Chemical and Fertilizing Co.*, 28 A. 702 (Pa. 1894) (the manufacture of bone fertilizer was held to be a nuisance *per se* because noxious odors and offensive smells were inseparable from the manufacture).

However, a commercial use in an exclusively residential area does not automatically render it a nuisance *per se*. *Blue Mountain*, 867 A.2d at 704; *see*

14

*also Daniels v. Notor*, 133 A.2d 520, 525 (Pa. 1957) (a motel located within a strictly residential neighborhood is not a nuisance *per se*). Only where "certain recognized unavoidable inherent characteristics of the use make it injurious to health and property in certain locations," may it be enjoined as a matter of law. *Id.*

Relying on *Reid v. Brodsky*, 156 A.2d 334, 336 (Pa. 1959), the City contends the sale of alcohol in a residential neighborhood amounts to a nuisance *per se*. However, the case does not support this proposition. In *Reid*, our Supreme Court considered whether an injunction was properly entered against a taproom that was approved by a zoning board. In dicta, the Court observed "the operation of a restaurant in which liquor and malt or brewed beverages are sold, duly licensed by the [PLCB], is a lawful business and, even though located in a residential district, *is not a nuisance per se.*" *Id.* at 337 (emphasis added). Because the taproom was a permitted use under the zoning ordinance, its operation could only be enjoined if it was a nuisance in fact. *Id.* Ultimately, the court enjoined the use of the taproom in question upon finding it was a *nuisance in fact* because it "disturbed the peace and quiet of this residential area and affronted the sensibilities of [residents] endeavoring to maintain in this urban area a decent, clean and wholesome environment in which to live and rear their families." *Id.* at 339.

The City also relies on *Diehl v. Lockard*, 385 A.2d 550 (Pa. Super. 1978), in support of its position that the sale of beer and wine is a nuisance *per se*. In *Diehl*, residents were granted a preliminary injunction to enjoin construction of a commercial fast food establishment in a zoned residential area as a nuisance *per se*. The trial court found that:

> To permit construction of the premises would result in
> such noise, fumes, smells, dust and lights that the normal

15

enjoyment of property surrounding the proposed construction and located within that residential area . . . would be unduly disrupted. Rest and sleep would be [a]ffected and the increase in traffic would be a danger to residents and especially the children of the area. In addition, the service of beer and wine, a venture previously excluded from the area, would present an additional possibility of danger. The particular character of the ... neighborhood should be maintained and a 'Pizza Hut' under the circumstances presented here would be out of keeping with the character of the neighborhood, and for the reasons set forth above, a nuisance per se.

*Id*. at 551.

On appeal, the enjoined property owner argued the injunction was premature and that residents should await the construction of the "Pizza Hut" and then bring their action after they experience the activity of the restaurant to establish a nuisance. The Superior Court disagreed and determined allowing construction "would prevent ... efforts to keep [the] area residential." 385 A.2d at 551. Because reasonable grounds existed that the construction and operation of a fast food restaurant in a purely residential neighborhood would alter the character of the community and constitute a nuisance *per se*, the Superior Court concluded that the trial court did not abuse its discretion in granting the injunction to preclude the use. *Id*. Contrary to the City's assertions, *Diehl* does not hold that the sale of beer and wine is a nuisance *per se*. Rather, the opinion merely noted that the service of beer and wine presented "*an additional possibility of danger*" when combined with the attendant harms of noise, fumes, smells, dust, lights, and increased traffic that rendered the use a nuisance *per se*. *Id*. at 551 (emphasis added).

Here, although the beer garden is located in a residential community, its mere existence in the residential area does not automatically render it a nuisance

16

*per se*.  *See Blue Mountain*.  In order to declare the use of the Property as a beer garden a nuisance *per se*, it still must have certain recognized, unavoidable, inherent characteristics that make it injurious to health and property.  *See id.*  Although our courts have recognized inherent problems resulting from the sale and consumption of alcoholic beverages, they have not declared the sale, service or consumption of alcoholic beverages a nuisance *per se*.  *See Vernon Township Volunteer Fire Department, Inc. v. Connor*, 855 A.2d 873, 882 (Pa. 2004); *Reid*; *Diehl*.  We decline to make such a declaration in this case.

## IV. Conclusion

For these reasons, we conclude the trial court did not abuse its discretion or misapply the law in finding "apparently reasonable grounds" exist to support Appellees' preliminary injunction where L&I did not meet the prerequisites to issue a cease operations order under the Philadelphia Code.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| SPTR, Inc., Newbolds Brew LLC, | : | |
| The American Sardine Bar, Inc., | : No. 1264 C.D. 2015 | |
| and the Point Breeze Fund LLC | : | |
| | : | |
| v. | : | |
| | : | |
| City of Philadelphia, | : | |
| Appellant | : | |

O R D E R

AND NOW, this 21st day of November, 2016, the order of the Court of Common Pleas of Philadelphia County, dated July 10, 2015, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

SPTR, Inc., Newbolds Brew LLC :
The American Sardine Bar, Inc., :
and the Point Breeze Fund LLC :
  :
  :
v. : No. 1264 C.D. 2015
: Argued: May 12, 2016
City of Philadelphia, :
           Appellant :

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

**DISSENTING OPINION BY**
**SENIOR JUDGE COLINS**            **FILED: November 21, 2016**

I must respectfully dissent from the well-crafted opinion of the majority.

As noted by the majority, a commercial beer garden is not a permitted use in a Residential Multi-Family (RM-1) zoning district in the City of Philadelphia (City). It is uncontested that the beer garden is being operated in a residential neighborhood without an appropriate use permit. Regardless of the salutary nature[1] of this so-called "pop-up beer garden," it is still being operated in derogation of the Philadelphia Code (Code). The novelty of a use does not render passè the presumption that a zoning ordinance is a legitimate exercise of the police

---

[1] The conclusion of the Court of Common Pleas of Philadelphia County that Appellee's "expenditure put forth to clear the [subject property] of trash, vermin, and other unsightly blight, was an improvement to the neighborhood," is particularly dubious. (Trial Court Op. at 9.) The care and maintenance of one's own property is not extraordinary, rather it is the minimum expected and required of any landowner.

power enacted to protect and preserve the public health, safety, and welfare. The burden to rebut this presumption does not lay with the agency tasked with enforcing the law but with the landowner seeking to show that the restrictions imposed are invalid.

By showing that the beer garden was operating in a residential zone and was doing so without a use permit, the City satisfied the criteria necessary to issue a valid Cease Operations Order; the City was not required to provide additional evidence to demonstrate that operating a non-residential use in a residential district without a permit was contrary to the public welfare.[2] The Court of Common Pleas of Philadelphia County (Trial Court) committed a palpable error of law by placing the evidentiary burden on the City rather than requiring Appellees to prove that operation of the beer garden was not contrary to the public welfare. As noted by the Majority, the Code makes clear that no land may be used for purposes other than single-family residential use without first obtaining a zoning permit. The burden to demonstrate that the Cease Operations Order was issued in error because it is an illegitimate exercise of the police power to require a property owner to obtain a permit to use property for purposes other than a permitted or single-family residential use is a heavy one, which Appellees failed to

---

[2] The Philadelphia Code allows the Department of Licenses and Inspections to issue a cease operations order whenever (1) any occupancy, use, or other activity is being performed in or on any building, structure, or land without one or more required permits or special exceptions, and either (2) the missing permits or special exceptions are required to protect public health or safety, or (3) the continued occupancy, use, or activity without the required permits or special exceptions is creating a public nuisance. Philadelphia Code § 14-306(1)(e)(.1). The beer garden was a commercial use being operated in a residential zone without a use permit and the requirement for a use permit in a zone where the use in question is not permissible is presumptively required to protect the public health and safety. Therefore, the City of Philadelphia met its burden to issue the Cease Operations Order and the burden shifted to Appellees to show that the Cease Operations Order was issued in error.

carry. Therefore, Appellees did not establish reasonable grounds to support injunctive relief.

Moreover, Appellees were free to apply for a permit, as they have now done, or to challenge any alleged failure of the Code to provide for temporary commercial uses. Appellees' failure to seek relief through the process available to them does not transform that process into one that is less than what Appellees are due or provide a justification for Appellees to circumvent the law altogether.

Finally, this Court, by affirming the preliminary injunction erroneously issued by the Trial Court, is usurping the Zoning Board of Adjustment's statutory function; the merits of this matter have been appealed to the Board and it is within the province of that body to determine, in the first instance, whether the Code is preempted by the Pennsylvania Liquor Control Board's (PLCB) issuance of off-premises catering permits and whether temporary use of a property zoned RM-1 for a seasonal beer garden as a result of stringing together off-premises catering permits issued by the PLCB is a valid use or contrary to the public welfare.[3]

The courts should not, and cannot, rewrite valid local zoning ordinances or enjoin their enforcement under the auspices of the judiciary's

---

[3] *Smith v. Zoning Hearing Board of Huntingdon Borough*, 734 A.2d 55, 58 (Pa. Cmwlth. 1999) ("a zoning hearing board is the entity charged with the interpretation and application of the zoning ordinance. It is well settled that a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference from a reviewing court. This principle is also codified in Section 1921(c)(8) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c)(8). The basis for the judicial deference is the knowledge and expertise that a zoning hearing board possesses to interpret the ordinance that it is charged with administering.") (citations omitted).

JGC-3

inherent equitable powers.[4]  The order of the Court of Common Pleas of Philadelphia County dated July 10, 2015 should be reversed.


_____

**JAMES GARDNER COLINS, Senior Judge**

---

[4] *See American Federation of Labor v. American Sash and Door Co.*, 335 U.S. 538, 553 (1949) (Frankfurter, J, concurring) ("Even where the social undesirability of a law may be convincingly urged, invalidation of the law by a court debilitates popular democratic government.  Most laws dealing with economic and social problems are matters of trial and error.  That which before trial appears to be demonstrably bad may belie prophesy in actual operation.  It may not prove good, but it may prove innocuous.  But even if a law is found wanting on trial, it is better that its defects should be demonstrated and removed than that the law should be aborted by judicial fiat.  Such an assertion of judicial power deflects responsibility from those on whom in a democratic society it ultimately rests the people."); *Bilbar Construction Co. v. Board of Adjustment of Easttown Township*, 141 A.2d 851, 856 (Pa. 1958) ("…what serves the public interest is primarily a question for the appropriate legislative body in a given situation to ponder and decide.  And, so long as it acts within its constitutional power to legislate in the premises, courts do well not to intrude their independent ideas as to the wisdom of the particular legislation.  Specifically, with respect to zoning enactments, judges should not substitute their individual views for those of the legislators as to whether the means employed are likely to serve the public health, safety, morals or general welfare.").