# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathleen L. Sain, Deborah Belin, : 
Michel and Barbara Gaus, Donald : 
and Heather Gawne, Sherri Kellner, : 
Carol Lockhart, Jeremy Lockhart, : 
Timothy Lockhart, William Lockhart, : 
Andrea Lurier, John C. and Susan M. : 
Parran, John and Ellen Simons, : 
John and Jessica Smith, and : 
Charles and Linda Watson, : 
                Appellants : 
                 : 
        v. : 
                 : 
Township of Marshall and : No. 834 C.D. 2020
Markman Development, LLC : Argued: March 18, 2021


BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: April 22, 2021


        Kathleen L. Sain, Deborah Belin, Michel and Barbara Gaus, Donald and Heather Gawne, Sherri Kellner, Carol Lockhart, Jeremy Lockhart, Timothy Lockhart, William Lockhart, Andrea Lurier, John C. and Susan M. Parran, John and Ellen Simons, John and Jessica Smith, and Charles and Linda Watson (collectively, Objectors) appeal from an order of the Court of Common Pleas of Allegheny County (trial court) that affirmed a decision of the Board of Supervisors of the Township of

Marshall (Township) that approved, with conditions, preliminary plans for a proposed real estate development by Markman Development, LLC (Developer). Order of Court, 7/27/20 (Tr. Ct. Order). Upon review, we affirm the trial court's order and deny Objectors' application for relief entitled Appellants' Application to Dismiss Markman Development, LLC for Failure to Preserve Standing (Application for Relief), filed on December 21, 2020.

## I. Background

Developer received approval of its preliminary subdivision plans for a residential development in the Township. Trial Court Opinion, 7/27/20 (Tr. Ct. Op.) at 2. The proposed development consists of 131 residential units on about 243 acres of land located in the Township's Conservation Residential (CR) District. *Id.* Developer plans to cluster the residences on a natural plateau on the otherwise hilly property. Tr. Ct. Op. at 2-3. The residential area will be buffered from the rest of the property by extensive stands of mature trees. *Id.* at 3. About 170 acres of the property will be dedicated as permanent greenway. Township Board of Supervisors Decision, 11/11/19 (Twp. Dec.) at 9.

The subdivision is governed and authorized by Chapter 174 of the Township's Code of Ordinances, Subdivision and Land Development (SALDO), and by Chapter 208 of the Township's Code of Ordinances, Zoning (Zoning Ordinance). *Id.* at 2-3.

The Township Planning Commission reviewed Developer's plans at a public meeting at which some township residents, including Objectors, voiced concerns about the proposed development. Tr. Ct. Op. at 3. The Planning Commission voted to recommend approval of the plan. *Id.* Thereafter, the Township held two public meetings at which it heard public comments and concerns.

2

*Id.* The Township ultimately approved Developer's plans, subject to extensive conditions. *Id.*; Twp. Dec. at 1-5.

Objectors appealed the Township's approval of the plans to the trial court, which affirmed the Township's decision and dismissed Objectors' appeal without taking additional evidence. *See* Tr. Ct. Op. at 3; Tr. Ct. Order. Objectors then appealed to this Court.

## II. Issues

On appeal,[1] Objectors repeat the same arguments they asserted before the trial court. They contend Developer's plan violated the SALDO or the Zoning Ordinance because the residential units and streets were not set back sufficiently from primary and secondary conservation areas, the greenway would be transected by an existing public road, and public access points to the greenway areas were not proper or clearly marked. *See generally* Br. of Appellants at 10-29. Objectors, additionally, request that Developer be dismissed from this appeal for failure to comply with applicable rules for intervention as a party. *Id.* at 29-30.

## III. Discussion

### A. General Compliance with Minimum Setback Distances

Objectors first assert that Developer's plan fails to comply with Section 174.302.D.2 of the SALDO, which provides:

> "Potential house sites shall be tentatively located along the proposed STREETS[.] House sites should generally be located not closer than 100 feet from PRIMARY CONSERVATION AREAS and 50 feet from SECONDARY CONSERVATION AREAS, taking into

---

[1] Where, as here, the trial court decided the appeal before it without taking additional evidence, this Court's review of a zoning appeal is limited to determining whether the municipality abused its discretion or committed an error of law. *Therres v. Zoning Hearing Bd. of Borough of Rose Valley*, 947 A.2d 226, 228 n.2 (Pa. Cmwlth. 2008) (citing *Gall v. Zoning Hearing Bd. of Upper Milford Twp.*, 723 A.2d 758 (Pa. Cmwlth. 1999)).

3

consideration the potential negative impacts of residential DEVELOPMENT on such areas as well as the potential positive benefits of such locations to provide attractive views and visual settings for residences."

Twp. Dec. at 8 (quoting SALDO, § 174.302.D.3). According to Developer's summary data, 65% of the proposed house sites are at least 100 feet from primary conservation areas, and 51% of the proposed house sites are at least 50 feet from secondary conservation areas. Twp. Dec. at 8. Objectors contend that these percentages do not show a general compliance with the applicable distance requirements. We disagree.

The Township rejected Objectors' contention for several reasons. The Township found the phrase "should generally be located" was not mandatory in nature. Twp. Dec. at 8. The choice of the word "should," which is aspirational, instead of "shall," which is mandatory, indicated that absolute compliance was not required. *Id.*; *accord Falkler v. Lower Windsor Twp. Zoning Hearing Bd.*, 988 A.2d 764, 768 (Pa. Cmwlth. 2010) (language in zoning ordinance that certificate to continue nonconforming use "should be filed" within a year of the effective date of ordinance amendments was permissive, not mandatory). The word "generally" further connoted a standard that is not absolute. Twp. Dec. at 3. The Township pointed out that the phrase "should generally be located" did not provide a measurable objective standard. *Id.*

The Township posited that its reading of the setback provisions comported with the SALDO's objectives of flexibility and efficiency, creation of greenway systems, and clustering of houses in less environmentally sensitive areas. Twp. Dec. at 9. The Township concluded Developer's plan for lot placement provided the maximum distances from primary and secondary conservation areas and lessened potential environmental impact. *Id.* The Township observed:

4

> If [] Developer had chosen to pursue the four-acre minimum lot Country Properties option authorized by Section 208-1601.B.2 of the [Zoning Ordinance] instead of the Cluster Properties option it did here, it would not have been subject to the 50[-] and 100-foot conservation area setbacks at all, which would have likely resulted in the disturbance of substantially more environmentally sensitive areas.

*Id.*

Finally, the Township determined its construction of the SALDO and the Zoning Ordinance was supported by Section 603.1 of the Pennsylvania Municipalities Planning Code[2] (MPC), 53 P.S. § 10603.1, which provides that in construing zoning restrictions, any doubt regarding the intended meaning of the restrictive language must be construed in favor of the property owner and against extending the restrictions. Twp. Dec. at 9.

Objectors dispute the Township's construction of the SALDO and the Zoning Ordinance. They insist that the only reasonable interpretation of the provisions at issue is that each separate lot must be generally in compliance with the setback requirements. Br. of Appellants at 15. Moreover, Objectors assert that a lot plan where over one-third of the lots are within 100 feet of primary conservation areas and nearly half are within 50 feet of secondary conservation areas cannot be considered "generally" in compliance with even aspirational setback provisions. *Id.* at 14-15.

This Court finds the Township's analysis and construction of the SALDO and Zoning Ordinance to be persuasive. The Township's analysis serves the overarching purpose of the Conservation Subdivision Design provision of the Zoning Ordinance, "to provide a means for the logical and efficient

---

[2] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101 – 11202.

DEVELOPMENT within the . . . CR . . . ZONING DISTRICT[] while maintaining the district's natural character." Zoning Ordinance § 208-1601. The Zoning Ordinance provides the following, sometimes competing, practical and aesthetic objectives that must be balanced to further this stated purpose by allowing flexibility in designing new subdivisions for cluster residences:

1. To conserve open land . . . ;

2. To provide greater Design flexibility and efficiency in the siting of services and infrastructure . . . ;

3. To reduce erosion and sedimentation . . . ;

4. To provide for a diversity of LOT sizes and BUILDING densities . . . ;

5. To . . . conserve a variety of irreplaceable and environmentally sensitive resource lands including provisions for reasonable incentives to create a greenway system for the benefit of present and future residents;

6. To permit clustering of houses and STRUCTURES on less environmentally sensitive soils . . . ;

7. To implement adopted . . . policies, as identified in the Marshall TOWNSHIP Comprehensive Plan;

8. To protect AREAS of the TOWNSHIP with productive agriculture soils . . . by conserving BLOCKS of land large enough to allow for efficient FARM OPERATIONS;

9. To create neighborhoods with direct visual access to open land, with amenities in the form of neighborhood greenway . . . ;

10. To provide for the conservation and maintenance of open land within the TOWNSHIP . . . ;

11. To provide standards reflecting the varying circumstances and interests of individual landowners . . . ; and

12. To conserve scenic views and elements . . . by minimizing views of new DEVELOPMENT from existing roads.

*Id.*, § 208-1601.A. The Township's analysis demonstrates its consideration and careful balancing of these objectives of the Zoning Ordinance.

Similarly, the Township properly balanced Developer's rights with aesthetic concerns pursuant to the SALDO. Section 174-302.D of the SALDO, governing land development application submission requirements, provides a four-step design process for conservation subdivisions. Step 1 relates to greenway delineation and allows for consideration of various factors, including designation of "all PRIMARY CONSERVATION AREAS and those SECONDARY CONSERVATION AREAS with the highest resource significance," the Township's comprehensive plan, consultation with the Planning Commission concerning the areas most suitable as greenway, and "practical considerations given to the tract's configuration, its context in relation to resource areas on adjoining and neighboring properties, and the APPLICANT'S SUBDIVISION objectives . . . ." SALDO § 174.302.D.1.(b)-(d). The Township's analysis properly balanced conservation of resource areas and practical considerations.

Balancing aesthetic issues with practical consideration of the developer's rights is essential to the Township's exercise of its zoning power. Although "a municipality may include consideration of aesthetic factors in the exercise of its zoning powers," the municipality may not deny authorization for a use based solely on "the discretionary exercise of its subjective aesthetic judgment."

7

*White Advertising Metro, Inc. v. Zoning Hearing Bd.*, 453 A.2d 29, 35 (Pa. Cmwlth. 1982).

Here, the Township's interpretation of the SALDO and the Zoning Ordinance comports with the directive of Section 603.1 of the MPC, in that it applies a meaning of "should generally be located" that favors Developer as the property owner and avoids increasing restrictions on development of the property. Further, the Township has applied a reasonable and common-sense interpretation that maximizes adherence to the conservation goals of the SALDO and Zoning Ordinance while allowing reasonable development of the property in a manner that will minimize the visibility and environmental impact of the development on the surrounding area.

We find particularly persuasive the Township's observation that Developer could have chosen a less restricted and more environmentally damaging plan. *See* Twp. Dec. at 9. Presumably, if Objectors were to succeed in this challenge to Developer's current plan, a new plan could be presented for approval that could take advantage of the less restrictive option, to the detriment of Objectors, other area residents, and the local environment. As the Township explained, Developer could have decided to build individual houses on four-acre minimum lots, an option authorized by the Zoning Ordinance, instead of clustering the residences. *Id.*; *see* Zoning Ordinance § 208-1601.B.2. Such a development plan would not have been subject to the 50 and 100-foot conservation area setbacks and could have eliminated the substantial greenway preserved under Developer's current plan. Instead, the Township has approved a plan that minimizes the effect of the development by maintaining a majority of the property as greenway while screening the development with dense stands of mature trees. This Court discerns no abuse of discretion or

8

error of law in the Township's decision. *See Blue Mt. Pres. Ass'n v. Twp. of Eldred*, 867 A.2d 692, 697 (Pa. Cmwlth. 2005) ("The land development process is a give and take process allowing the modification and change of plans as they are reviewed by the [Planning] Commission and [Township] Board."); *White Advert. Metro, Inc. v. Zoning Hearing Bd.*, 453 A.2d 29, 34 (Pa. Cmwlth. 1982) (board may consider factors other than those expressly set forth in zoning ordinance and "may review a proposed use with regard to its general detrimental effect and adverse impact on the welfare of the community . . . ").

## B. Proposed Road Placement

Objectors next insist the proposed street plans do not comply with the 50- and 100-foot setbacks of the lot placement provision in the SALDO. Br. of Appellant at 18-25. We reject Objectors' argument that the housing setbacks apply to streets in the development.

As the Township correctly observes, the placement of streets and trails in a development and the placement of house sites are governed by separate provisions of the SALDO. *See* Twp. Dec. at 8 (quoting SALDO, § 174.302.D.3 (set forth *supra* at 3-4)). Street placement is governed by the following provision:

> "A STREET plan shall be designed to provide vehicular access to each house, complying with the standards within this Article and bearing a logical relationship to topographic conditions. Impacts of the STREET plan on proposed GREENWAY LANDS shall be minimized, particularly with respect to crossing environmentally sensitive areas such as WETLANDS and traversing SLOPES exceeding 15%. STREET connections shall generally be encouraged to minimize the number of new CUL-DE-SACS to be maintained by the TOWNSHIP and to facilitate access to and from homes in different parts of the tract (and adjoining parcels)."

9

Twp. Dec. at 8 (quoting SALDO § 174-302.D.2). There is no mention of setbacks of streets from primary and secondary conservation areas. Had the Township intended to incorporate the housing setbacks into the street placement provision of the SALDO, it could have done so, but it did not.

Moreover, like the provision governing placement of houses, the street provision of the SALDO is aspirational rather than mandatory. It requires a street plan to *minimize* impact on greenway lands; it does not forbid any such impact. *See* SALDO § 174-302.D.2. It "encourage[s]" street plans to minimize the number of new cul-de-sacs that the Township must maintain, and to facilitate access to different parts of the tract. *Id.* Thus, the street provision of the SALDO reflects a clear intent by the Township to retain discretion and flexibility in balancing the concerns of developers, homeowners, and the public in order to foster placement of streets so as to provide appropriate access to residents of the development while minimizing the maintenance costs to the Township and the environmental impact. *See Blue Mt.*, 867 A.2d at 697. The Township did not abuse its discretion or err as a matter of law in concluding the housing setback requirements are inapplicable to streets in the development.

### C. Public Road Transecting Greenway

Section 208-1607(c)(4) of the Zoning Ordinance requires that land preserved as greenway "shall generally remain undivided . . . ." Twp. Dec. at 9 (quoting Zoning Ordinance § 208-1607(c)(4)). Here, Developer's plans provide for about 170 acres of greenway. The property is transected by Warrendale-Bayne Road, the planned residences and about 110 acres of proposed greenway on one side of the road and the remaining 60 acres of greenway on the other side of the road. *Id.*

10

Objectors argue the plans fail to provide greenway that is "generally . . . undivided" as mandated by the Zoning Ordinance. Br. of Appellants at 25-28.

The Township explains that the Zoning Ordinance does not define the terms "divided" and "undivided." Twp. Dec. at 10. However, the Township states it has in the past allowed greenway land to lie on both sides of a public road, and the Township's Zoning Board has approved subdivision plans in the past where a public road transects a greenway area. *Id.* Objectors do not challenge this statement. The Township further observes that "Section 208-1607(c)(4) [of the Zoning Ordinance] does not prohibit greenway land from being [transected] by a public road, particularly where, as here, that land has been considered one parcel for both real estate tax and conveyance purposes." *Id.* (citing *Bd. of Comm'rs of Twp. of O'Hara v. Hakim*, 339 A.2d 905, 908 (Pa. Cmwlth. 1975) (single tract separated by condemnation of easement for road was still one tract for zoning purposes));[3] *see also In re Land Use Appeal of Cooke* (Pa. Cmwlth., No. 1300 C.D. 2008, filed Mar. 31, 2009), slip op. at 6-7, 2009 Pa. Commw. Unpub. LEXIS 140, *8-9 (unreported) (noting township's acceptance of required greenway as a single lot although it was traversed by entry road for development and, as a result, one part of transected lot was less than minimum greenway tract size).[4] Conversely, the Township notes that not only is the 170-acre greenway that Developer proposes to set aside "the largest in any subdivision considered or approved to date in the Township," but even the 60 acres on the opposite side of the road from the rest of the property, on its own, is larger than any other greenway in the Township but one. Twp. Dec. at 10. The

---

[3] We note that *Hakim* is not directly on point, in that the zoning provision at issue did not relate to required greenway.

[4] This unreported decision is cited as persuasive pursuant to this Court's Internal Operating Procedures. *See* 210 Pa. Code § 69.414(a).

Township concludes that locating the proposed greenway on both sides of the road is consistent with the SALDO and the Zoning Ordinance, as well as the preservation goals and permissible recreational uses of the greenway. *Id.* (citing SALDO Section 174-801 & Zoning Ordinance Section 208-2902 (greenway areas may be accessible to residents of a development and/or to the Township)).

We agree. Objectors offer no persuasive authority in support of their assertion that greenway land transected by a public road is no longer undivided for purposes of the SALDO or the Zoning Ordinance. The Township did not abuse its discretion or commit an error of law in construing its ordinances to permit retained greenway to be located such that it is transected by an existing public road, consistent with its past construction of the applicable ordinances.

### D. Access Point Slopes

Objectors next argue that the Zoning Ordinance mandates pedestrian access to the greenway land in the form of a centrally located access point, at least 35 feet in width, for every 15 lots in the development. Br. of Appellants at 29; *See* Zoning Ordinance § 208-1607(D)(2)(a). Objectors contend Developer's plan does not clearly indicate the locations of all access points and that at least three points that appear to be access points are in areas with 25% or greater slope, which Objectors state is not accessible to pedestrians. Br. of Appellants at 29. Objectors also assert there do not appear to be any access points on the 60 acres of greenway located across Warrendale Bayne Road from the rest of the property. *Id.*

Objectors cite no authority for their implicit assertion that all access areas must be precisely delineated in Developer's preliminary plans. Among the conditions attached to the Township's approval of the preliminary plans is a requirement that "Developer shall grant the Township pedestrian easements in the

12

greenway land, *to be developed* in consultation with the Township, to facilitate future Township trail system connections." Twp. Dec. at 3 (emphasis added). Thus, both the Township and Developer apparently intend that at least some of the access points for the greenway areas will be determined as appropriate once the Township decides where it wants to place its trail system. Objectors offer no reason why such a course of action is improper or fails to comply with the Zoning Ordinance. We therefore conclude the Township did not commit an error of law or abuse its discretion in approving Developer's preliminary plans without precise designations of all greenway access points.

Further, although Objectors asserted that there were proposed access points with slopes of 25%, the trial court observed that Objectors offered no evidence that such a slope would not be accessible to pedestrians. Tr. Ct. Op. at 5. By contrast, Developer offered expert testimony that the slopes at those access points were not excessive and not so steep as to be detrimental to the general public. *Id.* at 6 (citing Certified Record at 533). The Township did not abuse its discretion or commit an error of law by accepting this unrebutted evidence.

### E. Intervention

In their final argument, Objectors assert that Developer should be dismissed as a party to this appeal because it failed to intervene properly. Br. of Appellants at 29-30. Objectors filed the Application for Relief seeking Developer's dismissal. *See* Application for Relief, 12/21/20. By order dated January 29, 2021, this Court directed resolution of the intervention issue along with the merits of this appeal. Order of Ct., 1/29/21.

Objectors do not dispute that as the owner of the property, Developer was entitled to intervene as of right by filing a notice of intervention pursuant to

13

Section 1004-A of the MPC,[5] 53 P.S. §11004-A (2006). Objectors likewise do not dispute that Developer's counsel filed an entry of appearance in the trial court and that Developer participated fully in the proceedings before the trial court. Objectors argue, however, that Developer's entry of appearance was inadequate to constitute a notice of intervention. Br. of Appellants at 29-30. We discern no merit in Objectors' assertion.

The trial court expressly recognized Developer as having intervened in the action. The trial court's caption on at least two interlocutory orders expressly referred to Developer as "Intervenor." *See* R.R. at 1470a & 1471a. The trial court's caption on both its opinion and its final order likewise designated Developer as "Intervenor." *See* Tr. Ct. Op. at 1; Tr. Ct. Order. The text of the trial court's opinion also referred to Developer as "Intervenor." Tr. Ct. Op. at 2. Thus, it is clear that Developer was a party in the trial court proceeding.[6]

Having successfully intervened in the trial court, Developer did not need to file a notice of intervention to be a party to the appeal in this Court:

> All parties to the matter in the court from whose order the appeal is being taken *shall be deemed parties in*

---

[5] Added by the Act of December 21, 1988, P.L. 1339.

[6] Objectors contend they preserved the issue of Developer's trial court intervention by raising it at oral argument in the trial court. Application for Relief at 4, ¶ 9 (citing Reproduced Record (R.R.) at 1576a-77a). Our review of the reproduced record revealed no challenge to Developer's intervention in the cited portion of oral argument. Several pages earlier in the transcript, counsel for Objectors mentioned the absence of a formal notice of intervention. *See* R.R. at 1570a-71a. However, the issue was not raised as a challenge to Developer's intervention. Counsel twice stated the matter was raised purely as "a housekeeping matter." *Id.* Counsel, moreover, expressly stated Objectors had "no objection" to Developer's intervention and indeed "would stipulate" to it. *Id.* We find this passing mention of the issue in an oral argument was insufficient to preserve it for appeal. *Accord Livingston v. Greyhound Lines*, 208 A.3d 1122, 1136 (Pa. Super. 2019) ("Statements by a party's counsel that the party has no objection to a ruling constitute an affirmative waiver that bars the party from raising that issue in post-trial motions or on appeal, even if the party had previously fully raised and preserved the issue.").

14

> *the appellate court*, unless the appellant shall notify the prothonotary of the appellate court of the belief of the appellant that one or more of the parties below have no interest in the outcome of the appeal . . . .

Pa. R.A.P. 908 (emphasis added). Here, Objectors cannot and do not contend that Developer has no interest in the outcome of this appeal. Having been a party in the trial court, Developer is deemed a party to the appeal. Therefore, the Application for Relief seeking dismissal of Developer as a party is denied.

## IV. Conclusion

Based on the foregoing discussion, the trial court's order is affirmed and the Application for Relief is denied.

_____
CHRISTINE FIZZANO CANNON, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathleen L. Sain, Deborah Belin,    :
Michel and Barbara Gaus, Donald    :
and Heather Gawne, Sherri Kellner,    :
Carol Lockhart, Jeremy Lockhart,    :
Timothy Lockhart, William Lockhart,    :
Andrea Lurier, John C. and Susan M.    :
Parran, John and Ellen Simons,    :
John and Jessica Smith, and    :
Charles and Linda Watson,    :
           Appellants    :
    :
        v.    :
    :
Township of Marshall and    :   No. 834 C.D. 2020
Markman Development, LLC    :

# O R D E R

AND NOW, this 22nd day of April, 2021, the order of the Court of Common Pleas of Allegheny County is AFFIRMED.

Appellants' Application to Dismiss Markman Development, LLC for Failure to Preserve Standing is DENIED.

 

 

_____
CHRISTINE FIZZANO CANNON, Judge